1815.

Chase
vs
Taylor.

complainants, or expressing any opinion as to their legal effect and operation, in which there would be no propriety, that being a subject proper for the consideration of another tribunal, the decree of the chancellor is affirmed.

DECREE AFFIRMED.

---

DECEMBER.

## CHASE vs. TAYLOR.

W T drew a foreign bill of exchange dated the 27th of April 1807, on W L, in favour of T C, payable at 60 days after sight; which bill was on the 6th of June 1807 presented for acceptance and refused, and so noted by a notary public, but no protest was ever made for non acceptance. W L at that time and afterwards, and on the 8th of August 1807, when the bill became due, had funds in his hands belonging to W T more than sufficient to pay the bill, and he was in good credit up to the 6th of August 1807, when he became a bankrupt. The bill was presented for payment, and no demand of payment from W L, and no protest for non payment were made until the 17th of November 1807. No notice was given to W T of the non-acceptance, and the non payment was not made known to him until some time in 1808. On the 17th of August 1807, W T, being much embarrassed in his commercial concerns, but having very considerable property in ships, &c. executed certain bills of sale in trust, &c. and on the 11th of September 1807, he executed one on the ship O, to T C, in trust, &c. On the 20th of September 1808 he satisfied the first mentioned bills of sale, and received a reconveyance. T C about that time pressed W T to settle an account, he claiming a large balance to be due to him, in which the bill of exchange was an article of charge, together with interest, damages and costs thereon. On the 27th of September 1808, the said account was settled, and W T paid to T C in cash, and notes, which were afterwards paid, the balance due on the said account. T C had declared to W T before the said settlement and payments, that he would not release his right under the deed of the 11th of September 1807, unless W T would settle the said account, and pay or secure the balance. In an action by W T against T C for money had and received—*Held*, that if W T, at the time of making the settlement of the 27th of September 1808, was ignorant of the fact that the bill of exchange had not been protested for nonacceptance, then the whole settlement was formed in mistake, and was not obligatory on W T, or if W T was then apprized of the said fact, but made the settlement, and gave the notes, in order to induce T C to relinquish his said lien on the ship O, which T C otherwise refused to do, then the settlement, payment and notes were not voluntary, and did not bind W T. That if the settlement was made by W T under an ignorance of the fact of nonprotest of the bill, or for the purpose of inducing T C to relinquish his said lien, which otherwise he refused to do, and that in the settlement the cash payment then made was intended by the parties to apply to the said bill, then W T was entitled to recover back so much of the said money as was paid on account of the said bill, except that proportion of the bill which was received by him of W L's estate. And if in the settlement, the notes given were intended by the parties to apply to the said bill, and that before the time of paying the notes, W T was still ignorant of the fact that the bill had not been protested for acceptance, then the payment of the notes was by mistake, and did not bind W L. And if the notes were intended by the parties to apply to the said bill, and at the time of taking them up W T was apprised of the fact that the bill had not been protested for non acceptance, but that he so took them up for the sole purpose of inducing T C to relinquish his lien on the ship, then the payment of the notes was not voluntary, and did not bind W T.

If W T, after he was informed of the irregularity in the protest of the bill of exchange for non payment, and of the non protest for non acceptance, and had taken up the bill, made a claim against the estate of W L therefor, and it was allowed by the commissioners of W L's estate, and a dividend allowed, and received by W T, it will not prevent W T from recovering from T C the balance paid by him on account of the bill, deducting such dividend.

No evidence can be given of the protest of a foreign bill of exchange for non acceptance, without producing the pretest itself, or a copy from the books of the notary, or proving that the books and the original protest are lost.

APPEAL from *Baltimore* County Court. This was an action of *assumpsit* for money had and received. The general issue was pleaded.

1. At the trial the plaintiff, (now appellee) read in evidence a bill of exchange drawn by him according to the custom of merchants, on the 27th of April 1807, in favour of the defendant, upon one *William Lees*, merchant at *Liverpool*, in *England*, for £1000 sterling, payable sixty days after sight. And further offered evidence to prove, that the said bill of exchange having been received by the defendant, was by him transmitted to one *Thomas Slater*, his

1815.

Chase
vs
Taylor

correspondent at *London*, for the purpose of being presented and paid; that the bill was accordingly presented to *Lees*, at *Liverpool*, for acceptance, on the 6th of June 1807; that *Lees* refused to accept it, and that it was noted for nonacceptance by the notary who presented it, but that no protest was then, or at any time afterwards, made for or on account of the said nonacceptance; that *Lees*, at the time of the said presentation, and from that time until the bill became due and payable, and afterwards, had in his hands effects of the plaintiff, over and above all other demands, more than sufficient to pay and satisfy the bill; and that at the time of the drawing the bill, the plaintiff had shipped to *Lees* a valuable cargo belonging to the plaintiff, which before the bill was presented had arrived at *Liverpool*, and had been received by *Lees*, and was in his possession as the property of the plaintiff, when the bill was presented, and formed a part of the said effects, and was in itself much more than sufficient to pay and satisfy the bill; that *Lees* sold and disposed of the said cargo, for the use and as the property of the plaintiff, between the time of the presentation of the bill, and the 8th of August 1807, when it became due, and had the same, with more effects of the plaintiff, in his hands, when he, *Lees*, became a bankrupt on the said 8th of August, up to which time *Lees* was in good credit. That the said bill was not presented for payment, and that no demand of payment from *Lees*, who continued to reside at *Liverpool*, and no protest for nonpayment was made, until the 17th of November 1807, more than three months after the bill was at maturity. That no notice was given to the plaintiff by or on behalf of the payee of the bill of the said nonacceptance; and that the nonpayment of the same was not in any manner made known to him until sometime in the year 1808. That on the 17th of August 1807, the plaintiff, being much embarrassed in his commercial concerns, but having very considerable property in ships and merchandize, and being pressed by creditors, duly made and executed to the persons therein named the following deeds for the ship *Orozimbo*, and her cargo, viz. A bill of sale of the ship *Orozimbo*, to *George Salmon*, *William Winchester*, *Ralph Higginbotham*, and *James Cox*—consideration $50,000, dated 17th of August 1807; and a deed of trust to the same persons—consideration $42,495 14,

for the cargo, &c. of the ship *Orozimbo,* dated on the same day; and also a deed for the cargo of the *Orozimbo* to the defendant, and *Joseph Sterett,* on the 11th of September 1807, which should remain after satisfying the trusts mentioned in the last above mentioned deed, to pay the defendant $17,500, the amount of negotiable paper loaned by the defendant to the plaintiff; and to pay *Joseph Sterett* $5,000, &c. The plaintiff further gave in evidence, that on the 9th of September 1808, the ship *Orozimbo* arrived in the port of *Baltimore,* with a very valuable cargo on board; and that on the 20th of the same month, he was enabled, by the assistance of a friend, to satisfy the claims mentioned in the two deeds dated the 17th of August 1807, and received a reconveyance of the ship and cargo therein mentioned, which he gave in evidence. That about the same time the defendant pressed the plaintiff to settle an account, in which he claimed a large balance to be due to him, and in which the said bill of exchange was an article of charge, together with interest, damages and costs thereon. The account was as follows:

Dr. *Wm.* Taylor, in ac. current with *Thorndick Chase,* Cr.
1807.

| | | |
|---|---:|---:|
| Sept. 19. To amount of sales of 103 hhds. tobo. &c. | 10,049 | 16 |
| 1808. | | |
| Sept. 13. To bill of exchange returned from London under protest, and charges, &c. | 5,683 | 31 |
| To, &c. &c. amounting in all to | 18,950 | 18 |
| By credits, &c. | | |
| By balance due, | 12,283 | 56 |
| To balance due, | $12,283 | 56 |

That on the 27th of September 1808, the plaintiff settled this account with the defendant, and paid to him in part discharge of the balance appearing to be due, the sum of 6,327 97, and gave him his notes for the remainder, amounting to to $5,950, which notes he gave in evidence. He also gave in evidence that the said notes were afterwards, in the months of May, August and September 1809, paid in full by plaintiff to the defendant, that at the time of making the said settlement, and payment and giving the said notes, on the 27th of September 1808, the

plaintiff was wholly ignorant that the said bill of exchange had not been protested for nonacceptance, or that payment had not been demanded, or protest for nonpayment made, sooner than the 17th of November 1807; that he had not then received notice from the defendant of the time when the said bill was presented for acceptance, or that acceptance had been refused as the law required. That the defendant had declared to the plaintiff, before the said settlement and payment were made, and the said notes given on the 27th of September 1808, that he would not release his right under the deed of the 11th of September 1807, unless the plaintiff would settle the aforesaid account, and pay or secure the balance; that the said bill of exchange was not shown to the plaintiff at the time of the said settlement, but that the defendant promised to send it to him, and did send it a few days afterwards; and that when the plaintiff had examined it, and the protest annexed to it, (which protest he offered in evidence dated the 17th of November 1807,) he complained to the defendant, that he had been induced to pay a bill for which it now appeared he was not liable, and observed, that the defendant ought to refund it; to which the defendant replied, that if the money could be recovered at all, he ought not to be sued for it. That when the said settlement and payment were made, and the said notes were given on the 27th of September 1808, the defendant required from the plaintiff two bills of sale to secure the payment of the said notes, one of which bills of sale conveyed to the defendant a moiety of the ship *Fame*, and the other conveyed to him the ship *Roboreus*, as expressed in the receipt or acknowledgment given by the defendant for the said bills of sale, which receipt the plaintiff gave in evidence. That upon the said bills of sale being executed and delivered to him, the defendant, and *Joseph Sterett*, released and reconveyed to the plaintiff the property mentioned in the deed from the plaintiff to them of the 11th of September 1807, which release the plaintiff read in evidence. And that the defendant held the said bills of sale of the *Fame* and *Roboreus* until the aforesaid notes were fully paid. The plaintiff further offered evidence, that he was ignorant of the want of a protest for the nonacceptance of the aforesaid bill of exchange, when he paid and satisfied the said notes; and that while the said ships *Fame* and *Roboreus* were ly-

**1815.**

Chase
vs
.Taylor

ing at the port of *Baltimore*, and the said bills of sale were in the possession of the defendant in full force, the plaintiff, for the purpose of transporting a certain quantity of coffee, part of the said cargo of the ship *Orozimbo*, to the continent of *Europe*, chartered the three following vessels; that is to say, the *Leda*, *Richmond*, and *Dolphin*, and did actually pay for the freight of said property the sum of $15,000, and upwards. The defendant then gave in evidence, that at the time when the settlement of the 27th of September 1808, was made, the plaintiff had been informed, and did know, that the said bill of exchange had been presented for acceptance to *Lees*, on the 6th of June 1807, and that the acceptance thereof had then been by him refused, and that the said bill had not been protested for nonacceptance by or for the defendant; and also had been informed, and did know at the time of the said settlement, that the said bill was not protested for nonpayment until the 17th of November 1807; and that neither at the time of the said settlement, nor at any time before, did the plaintiff in any manner object to the payment of the said bill with damages and interest, but offered to secure the payment thereof, and that the only difference between him and the defendant, at the time of, and before the settement, was about the nature of the security to be substituted by the plaintiff instead of the lien on the cargo of the *Orozimbo*, then held by the defendant; and that the said payment and settlement, and also the payment of the said notes, were voluntary on the part of the plaintiff, and made with a full knowledge of the undue delay in protesting the said bill for nonpayment, and of the nonprotest thereof for non acceptance. The defendant also gave in evidence, that on the 8th of August 1807, when the said bill became payable, *Lees* became bankrupt, and was duly declared bankrupt according to the laws of *England*; and that the plaintiff afterwards, and after he had made the said settlement and payment of the 27th of September 1808, and before he had paid the said two notes then given, did present his account against the estate of the said bankrupt, to the assignees and commissioners of the said bankrupt, which account included the sum so paid to the defendant for principal, damages and interest, on the said bills, and was passed by the said commissioners, by whose order a dividend of 7s 6d sterling in the pound on the said account was paid to the plaintiff, and received by him before the commencement of this action. And also gave in evidence, that the defendant did not at any time take, and never had or threatened to take, any actual possession either of the cargo of the *Orozimbo*, or of the said ships *Fame* or *Roboreus*, or either of them, and that all of them remained in the actual possession of the plaintiff. And also gave evidence to prove, that the plaintiff sustained no actual loss or damage from the failure of the defendant to cause the said bill to be protested for nonacceptance, or to give notice thereof to the plaintiff, or from the delay of the defendant to cause the said bill to be presented for payment in due time, and to

be duly protested for nonpayment. He also gave evidence to prove, that the cash payment made on the 27th of September 1808, was intended by the plaintiff and defendant to apply to the parts of the said account due for matters other than the said bill of exchange, and that the said two notes were intended to apply to the part of the said account arising from the said bill of exchange; which evidence arises wholly from the papers, facts and circumstances, stated above. The plaintiff further offered evidence, that he sustained loss by the omission of the defendant to cause the said bill to be protested for nonacceptance, and to give notice thereof to the plaintiff, and also from the delay of the defendant to cause the said bill to be presented for payment, and protested for nonpayment. The plaintiff further offered evidence, that the cash payment made on the 27th of September 1808, was not intended by the plaintiff and defendant, or either of them, to apply to the parts of the said account, other than the said bill of exchange, but that the said payment was intended to apply, in the first instance, to the said bill of exchange; which evidence also arises wholly from the facts and circumstances stated above. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if they believe the facts so given in evidence by the plaintiff, and that at the date of the settlement of the said account on the 27th of September 1808, he was ignorant that the said bill of exchange had not been regularly protested for nonacceptance, or that the same was not presented for payment at the regular time of the payment thereof, after the said presentation for acceptance, and protested for nonpayment; or if they believe that the plaintiff, at the settlement of the said account, had knowledge of the said facts, but that the defendant refused to release the power or control which he possessed over the cargo of the *Orozimbo*, unless the plaintiff settled the said account, and gave the promissory notes, and bills of sale for the ships *Flame* and *Robocreus*, to the defendant, then the plaintiff is entitled to recover in this case. This opinion the Court, [*Nicholson*, Ch. J. and *Hollingsworth* and *Bland*, A. J.] refused to give; but were of opinion, and so directed the jury, that if in their opinion the plaintiff, at the time of making the settlement of the 27th of September 1808, was ignorant of the fact that the said bill had not been protested for nonacceptance, then the whole settlement was formed in mistake, and was not obligatory on the plaintiff; or if the jury should be of opinion, that the plaintiff was then apprized of the said fact, but made the said settlement, and gave the said notes, in order to induce the defendant to relinquish his said lien on the cargo of the *Orozimbo*, which the defendant otherwise refused to do, then the said settlement, payment and notes, were not voluntary, and do not bind the plaintiff. And if the jury should be of opinion, that the said settlement of the 27th of September 1808,

was made by the plaintiff under ignorance of the said fact of nonprotest, or for the purpose of inducing the defendant to relinquish his said lien, which he otherwise refused to do, and that in the said settlement the cash payment then made was intended by the parties to apply to the said bill of exchange, then the plaintiff is entitled to recover back in this action so much of the said money as was paid on account of the said bill of exchange, except that proportion of the said bill which was received by him of *Lees'* estate at *Liverpool*. And if the jury should be of opinion, that in the said settlement, the notes given as aforesaid were intended by the parties to apply to the said bill of exchange, and that before the time of taking up the said notes, the plaintiff was still ignorant of the fact that the said bill had not been protested for nonacceptance, then the payment of the said notes was by mistake, and does not bind the plaintiff. And the court was also of opinion, that if the said notes were intended by the parties to apply to the said bill of exchange, and at the time of taking them up, the plaintiff was apprized of the fact that the said bill had not been protested for nonacceptance, but that the plaintiff so took them up for the sole purpose of inducing the defendant to relinquish his lien on the ships *Fame* and *Roboreus*, then the payment of the said notes was not voluntary, and did not bind the plaintiff. The defendant excepted.

2. The defendant, to prove that the said bill of exchange had been duly protested for nonacceptance, offered in evidence the memorandum noted, viz. "6th June 1807, *John Irvin*, N. P." which he offered to prove was made by a notary public in *Liverpool*, at the foot of the bill; and also for the same purpose proved that the said notary is now dead, and has been for some time past, and that it is the usual course, in relation to bills of exchange, to protest them for nonacceptance as soon as they have been noted for nonacceptance. The defendant then prayed the opinion of the court to the jury, that if the jury should be of opinion that the bill of exchange was presented for acceptance on the 6th of June, and was duly noted and protested for nonacceptance, and that the plaintiff was in due time informed of the said notation and protest, although the said protest was never shown to him, then that the omission to protest the bill for nonpayment, when according to its tenor it became due, did not exonerate the plaintiff from his legal responsibility on the bill. But the court were of opinion, and so directed the jury, that the defendant cannot give any evidence of the protest of the said bill for nonacceptance, without producing the protest itself, or a copy thereof from the books of the notary, or proving that the said books, and the original protest, are lost, and therefore refuse the direction prayed. The defendant excepted.

1815.

Clase
vs
Taylor

3. The defendant then prayed the opinion of the court, and their direction to the jury. that if they believe that the plaintiff, after he was informed of the irregularity in the protest of this bill of exchange for nonpayment, and of the nonprotest thereof for nonacceptance, and had taken up the said bill, made a claim against the estate of *Lees*, which claim included the said bill of exchange, and the money paid thereon by the plaintiff to the defendant as aforesaid, and that the said claim was allowed by the commissioners of *Lees'* estate, and a dividend thereon allowed, and paid and received by the plaintiff, then the plaintiff was not entitled to recover in this action. This opinion the court refused to give. The defendant excepted.

4. The defendant then gave in evidence, that on the 10th of June 1807, four days after the noting of the said bill of exchange for nonacceptance, *Lees* wrote and transmitted to the plaintiff a letter, informing him that the acceptance of the said bill of exchange had been refused, and that the ultimate payment thereof was doubtful, which letter was received by the plaintiff in the usual time, and long before the said settlement of the 27th of September 1808, and he gave the letter in evidence. And he then prayed the opinion of the court, and their direction to the jury, that if they believed from the evidence that the said letter was written and received as aforesaid, and that the said bill of exchange was noted as aforesaid for nonacceptance, then the want of a protest thereof for nonacceptance did not in law absolve the plaintiff from his liability on the said bill of exchange, and therefore could not operate to enable him to recover in this action. This direction the court refused to give, being of opinion, that the memorandum on the said bill of exchange was no evidence of the same having been noted for protest; and that to receive other evidence of a protest for nonacceptance, than the protest itself, or a copy of it, except where the original and the record have been lost or destroyed, would be to step over all those rules of the law of evidence by which the commercial world is governed. The defendant excepted.

5. The defendant then prayed the opinion of the court, and their direction to the jury, that if in their opinion the plaintiff, at the time of settling the said account, making the said payment in cash and notes on the 27th of September 1808, or of taking up the said notes, had received no notice of any protest of the said bill of exchange for nonacceptance, and that no such protest had been made at the time of presenting the said bill for acceptance or afterwards, and that the plaintiff, at the time of taking up the said bill of exchange on the 27th of September 1808, by paying the amount in cash and notes as aforesaid, or of taking up those notes as aforesaid, was ignorant of the omission to protest the said bill for nonacceptance, then

such ignorance does not affect the right of the defendant to retain the money for which this action is brought. But the court also refused to give this opinion and direction. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before EARLE, JOHNSON, and MARTIN, J.

*Harper*, for the Appellant.

*Binkney* and *W. Dorsey*, for the Appellee. They referred to *Astley vs Reynolds*, 2 *Stra.* 915, 916.

THE COURT concurred with the County Court in the opinions given in all the bills of exceptions.

JUDGMENT AFFIRMED.

---

## CHILTON vs. JONES

**DECEMBER.**

In an action on the case on a warranty by C, that certain slaves sold to J, were sound and healthy, knowing them to be unsound, &c the evidence was, that when the slaves were about to be delivered, the agent of J said to C, do you deliver those slaves as sound? He answered, I know nothing of them; I refer you to D; I got them from him; I did n t know any thing about them till now. He will deliver them. The agent then said to D, are those slaves sound. To which he replied, they are sound to the best of my knowledge. D then delivered the slaves to the agent. One of the slaves was unsound at the time they were delivered. J offered to give in evidence the declarations of D, made some time before the sale to J, for the purpose of proving that he knew the slaves to be unsound before and at the time of their delivery—*Held,* that the evidence was inadmissible. *Held* also, that the circumstance that the mother of the slaves having died with the king''s evil, or scrophula, was not of itself sufficient evidence of the unsoundness of any of her children, to entitle J to recover in this action.

The declaration in the *first* count stated, that C, by his bill obligatory, obliged himself to pay to J £380, the amount to be paid off in slaves to be valued, &c. That C, in discharge of the bill, did deliver certain slaves, and they were valued, &c. which slaves C undertook and promised J were sound and healthy; in consideration thereof J delivered up the bill obligatory—averment, that the slaves were not sound and healthy, and that C knew them not to be so, but falsely, &c. to deceive J, did not regard his promises, by reason whereof the slaves were of no use and value to J. The *second* count was on a warranty, that certain slaves sold, &c were sound and healthy, knowing them to be unsound and unhealthy, &c. no damages were laid in the declaration—*Held,* that on the evidence above stated J was not entitled to recover on his declaration.

APPEAL from *Montgomery* County Court. This was an action on the case. The declaration contained two counts—1. That on the 21st of October 1808, the defendant, (now appellant,) by his bill obligatory, promised and obliged himself to pay to the plaintiff, (now appellee,) £380 8 4. the amount to be paid off, in negroes, to be valued by two persons, as they were selling in 1807. That the defendant, in payment and discharge of the said bill, on the 31st of December 1810, did deliver to the plaintiff certain negroes, and they were delivered and valued, that is to say, a negro boy named *John* at the sum of, &c. which said negroes the defendant undertook, and then and there faithfully promised the plaintiff, were sound and healthy. That the plaintiff, in consideration thereof, delivered up the said bill obligatory. Averment, that the negroes were not sound and healthy, and that the defendant knew them not to be so, but falsely, fraudulently, and craftily, to deceive the plaintiff, did not regard his said several promises, &c. by reason whereof the said negroes were of no use and value to the plaintiff. 2. On a warranty that certain negro slaves sold, &c. were sound and healthy, knowing them to be unsound and unhealthy, &c. The defendant pleaded *non assumpsit*, and issue was joined.