## Case No. 14,275b.

### TUTT et al. v. IDE et al.

#### [3 Blatchf. 249.] [1]

Circuit Court, D. New York. Feb. 2, 1855.

ASSUMPSIT—MONEY PAID UNDER DURESS—CARRIERS.

1. The case of Astley v. Reynolds, 2 Strange, 915, which decides, that where money is extorted by duress of goods, assumpsit will lie for it, has not been overruled by the courts of New York, and is followed in England.

2. The general rule is, that an action for money had and received lies, whenever money has been received by the defendant, which, ex æquo et bono, belongs to the plaintiff.

3. The cases examined, as to recovering back money paid on compulsion.

4. Where A., a common carrier, agreed with B. to convey goods, at a specified rate for freight, and then refused, at the place of destination, to deliver the goods, except on payment of freight at a higher rate, and B., in order to obtain possession of the goods, paid to A. the sum demanded, *held*, that the payment was not voluntary, and that the excess beyond the agreed freight might be recovered back.

[Cited in Brown v. Pierce, 7 Wall. (74 U. S.) 216; Swift v. U. S., 111 U. S. 29, 4 Sup. Ct. 247.]

[Cited in Adams v. Schiffer, 11 Colo. 15, 17 Pac. 29; Simmons v. Trumbo, 9 W. Va. 367; West Virginia Transp. Co. v. Sweetzer, 25 W. Va. 452; White Pine Co. Bank v. Sadler (Nev.) 6 Pac. 944.]

This was a demurrer to the third count of a declaration. The count alleged that the defendants [John S. Ide and others], as common carriers of goods between Boston and St. Louis, agreed with the plaintiffs [Thomas E. Tutt and others] to receive at Boston and convey to St. Louis, for the price of $1 25 per hundred pounds, all goods which the plaintiffs should deliver to them at Boston during the month of July, 1852, and deliver the same to the plaintiffs at St. Louis within a reasonable time; that, during the month of July, 1852, the plaintiffs delivered to the defendants, and the defendants received, at Boston, 1,216 cases of boots and shoes, of the weight of 89,173 pounds, to be conveyed to St. Louis under the said agreement, at the rate of $1 25 freight per hundred pounds: that the defendants conveyed the goods to St. Louis, but refused to deliver them to the plaintiffs on payment of freight at that rate; that the plaintiffs demanded such goods, and offered to pay for

their conveyance at that rate, but the defendants claimed that the goods were subject to freight and charges to the amount of $2,202 57, and refused to deliver the goods without being paid that amount; and that the plaintiffs, in order to obtain possession of the 1,216 cases, were obliged to pay, and did, by compulsion and against their will, pay said sum of $2,202 57, being $1,087 91 more than the sum for which the defendants had so agreed to convey and deliver the goods. To this count there was a general demurrer and joinder.

John H. Reynolds, for plaintiffs.
Nicholas Hill, Jr., for defendants.

HALL, District Judge. It was insisted by the defendants, upon the argument, that the plaintiffs paid the excess which they seek to recover back, without legal coercion,—not by mistake, but with a full knowledge of the facts; and that the payment was therefore voluntary, and could not be recovered back. On the other hand, the plaintiffs insisted that the payment was compulsory, and that they were entitled to recover back the excess, beyond the sum due under the contract, which was paid by them to obtain possession of their goods.

It was conceded by the counsel for the defendants, that the case of Astley v. Reynolds, 2 Strange, 915, was in point as an authority for the plaintiffs; but he insisted that that case had been overruled by the courts of this state, and that the rule of law in this state was well established, and was directly opposed to the doctrines of that case. The earliest case cited to sustain this position is that of Hall v. Schultz, 4 Johns. 240. The case of Astley v. Reynolds, and also the case of Knibbs v. Hall, 1 Esp. 84, in which the principle of the case of Astley v. Reynolds was said to have been overruled, were referred to in that case. But Spencer, J., in delivering the opinion of the court, without adverting to the case of Bates v. New York Ins. Co., 3 Johns. Cas. 238, which will be hereafter referred to, and "without undertaking to pronounce between the cases cited" (Astley v. Reynolds and Knibbs v. Hall), declared that the case then before him differed materially from both. In the case then under consideration, the defendants had purchased the lands of the plaintiff on execution, under a verbal agreement to convey them to him on the repayment of the amount advanced, with interest, and a reasonable compensation for the defendants' trouble. Afterwards, when plaintiff applied to have the agreement reduced to writing, they required him to execute an agreement in which the compensation for their trouble was fixed at $300, which was deemed extortionate and unjust. The agreement was executed, and the $300 subsequently paid, and the conveyance to the plaintiff made; and he then brought his ac-

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

tion to recover back the $300. In concluding his opinion. Mr. Justice Spencer said: "On the ground that there existed no legal right on the part of the plaintiff to demand or enforce a conveyance, that he must be considered in the light of any other purchaser, and that the defendants might make their own terms, and that the plaintiff has voluntarily and with his eyes open, fixed the compensation claimed by the defendants, and paid them the money, he can have no claim to call on the court to aid him in getting rid of what he conceives an unconscientious advantage. But, if there did exist a legal remedy to enforce a reconveyance, as the measure of the defendants' claim to compensation rested in arbitrary discretion, the plaintiff, by voluntarily acceding to the terms proposed by the defendants, has lost any right to call on a jury to relieve him from an allowance deliberately fixed by himself." It is, I think, quite clear that this case of Hall v. Shultz does not overrule the case of Astley v. Reynolds or the case of Bates v. New York Ins. Co., above referred to; and I think the same remark applies to the cases, cited by the defendants' counsel, of Ripley v. Gelston, 9 Johns. 201; Clarke v. Dutcher, 9 Cow. 681; Supervisors of Onondaga v. Briggs, 2 Denio, 39, 40; Wyman v. Farnsworth, 3 Barb. 371; and Elliott v. Swartwout, 10 Pet. [35 U. S.] 137.

The manuscript opinion of Mr. Justice Nelson in the case of Converse v. Coit [Case No. 3,145] appears to favor, if it does not directly sanction, the position assumed by the defendants. But, on looking into the bill of exceptions in that case, it appears that the flour on which the excessive charges for freight were demanded and paid had been delivered two or three days prior to such payment; and that there was no formal demand made of the flour, and no refusal to deliver it up, and no threat made of detaining the flour because of a refusal to pay. The question now raised was not presented in that case, and, therefore, the decision therein is not an authority for the position assumed by the defendants in this case.

The case of Astley v. Reynolds was decided by the king's bench in Michaelmas term (5 Geo. 2), 1732. It is admitted that, if that case is to be followed, the question presented by the demurrer must be decided in favor of the plaintiffs. But, it is contended, as before stated, that Astley v. Reynolds has been overruled by the supreme court of this state in the cases before cited. Those cases have been fully considered, and, having reached the conclusion that they have not expressly overruled the case in 2 Strange, I now propose to refer to other cases in the courts of this and other states and in England, which are supposed to bear directly upon this question.

In Bates v. New York Ins. Co., 3 Johns. Cas. 238, decided in 1802, the plaintiff had purchased, from one Norman Butler, fifty shares of the stock of the defendants, subject to some future calls. Those calls were paid by the plaintiff, and he became entitled to a transfer of the stock upon the books of the company. The defendants refused to transfer this stock to the plaintiff until the plaintiff paid a debt due to them from Butler, the original owner of the shares. This the plaintiff paid. He afterwards brought his action to recover it back; and the court held, after a verdict taken subject to the opinion of the court upon the facts stated, that the plaintiff was not liable for the payment of $465 of the amount paid by him to procure the transfer, and that he was therefore entitled to recover back that amount, in an action for money had and received. Thompson, J., delivered the opinion of the court, and referred with approbation to Astley v. Reynolds and to Irving v. Wilson, 4 Term R. 485, and also to Munt v. Stokes, Id. 561, in which he said the principles of the case of Astley v. Reynolds were fully recognized and adopted. In Fleetwood v. City of New York, 2 Sandf. 479, Mr. Justice Sandford refers with approbation to the case of Chase v. Dwinal, 7 Greenl. 134, and says: "There are cases of duress of personal property, in which payments for its relief are deemed involuntary, and the money may be recovered back. Most of these cases have arisen upon seizures of goods under revenue or excise laws, and by public officers acting under process or warrant of law. The principle has been extended, occasionally, to cases where bailees or others, who came into the possession of goods lawfully, have exacted more than was due, before they would relinquish such possession. It is founded upon the movable and perishable character of the property, and the uncertainty of a personal remedy against the wrong-doer." The general rule undoubtedly is, that this action for money had and received, being an equitable action, lies whenever money has been received by the defendant, which, ex æquo et bono, belongs to the plaintiff. Buel v. Boughton, 2 Denio, 91. In the case of Chase v. Dwinal, 7 Greenl. 134, it was held, that money paid to liberate a raft of lumber detained in order to exact an illegal toll, might be recovered back. Weston, J., delivering the opinion of the court, refers to the remark of Spencer, J., in Hall v. Shultz, that Astley v. Reynolds had been overruled by Lord Kenyon in Knibbs v. Hall, and says: "There" (in Knibbs v. Hall) "the plaintiff had paid, as he insisted, five guineas more rent than could have been rightfully claimed of him, to avoid a distress which was threatened. Lord Kenyon held this to be a voluntary payment and not upon compulsion, as the party might have protected himself from a wrongful distress by replevin. His lordship does not advert to the case of Astley v. Reynolds, and subsequently, in Cartwright v. Rowley, 2 Esp. 723, he

refers, with approbation, to an action within his recollection, for money had and received, brought against the steward of a manor, to recover money paid for producing at a trial some deeds and court rolls, for which he had charged extravagantly. It was urged that the payment was voluntary; but, it appearing that the party could not do without the deeds, and that the money was paid through the urgency of the case, the action was sustained." In Chase v. Taylor, 4 Har. & J. 54, it was held, that money improperly demanded as a condition of the release of a ship pledged to the party receiving the money, might be recovered back, in an action for money had and received. The cases of Alston v. Durant, 2 Strob. 257, and Richardson v. Duncan, 3 N. H. 508, are also strongly confirmatory of the case of Astley v. Reynolds; and other cases of a similar character are to be found in the reports of the different states.

In respect to the English cases, it may be observed, that the decision in Astley v. Reynolds, made in the king's bench sitting in banco, ought not to be considered as overruled by a nisi prius decision, though made by a judge of such distinguished ability and learning as Lord Kenyon. But the case of Astley v. Reynolds and not that of Knibbs v. Hall has, since the decision of Lord Kenyon, been followed in England. In 1827, in Shaw v. Woodcock, 7 Barn. & C. 73, it was held by Lord Chief Justice Tenterden, and Justices Bayley, Holroyd and Littledale, of the king's bench, that a payment made in order to obtain possession of goods or property to which a party was entitled, and of which he could not otherwise obtain possession at the time, was a compulsory and not a voluntary payment, and might be recovered back. In 1844, in the case of Parker v. Great Western Railway Co., 7 Man. & G. 253, it was held by the court of common pleas in England, Chief Justice Tindal delivering the judgment of the court, that money paid by the plaintiff to a common carrier, to obtain possession of the plaintiff's goods, beyond the amount to which the carrier was entitled, might be recovered back; such payment not being considered as a voluntary payment. And this doctrine I understand to have been again acted upon in the court of exchequer in Parker v. Bristol & Exeter Railway Co., 7 Eng. Law & Eq. 528, in the year 1851.

I am entirely satisfied, as well upon the authority of these cases, as upon principle, that the payment alleged in the count demurred to, cannot be held to have been a voluntary payment. The demurrer is, therefore, overruled.

NOTE. The case was subsequently tried, on issues of fact, before HALL, District Judge, and a jury, when a verdict was found for the plaintiffs, the court ruling, as to the law, in accordance with this opinion. For a motion before NELSON, Circuit Justice, made by the defendants, for a new trial, see [Case No. 14,275a].