Bissell, J.,
delivered the opinion of the court.
The process which we have been compelled to pursue to formulate this opinion is like the examination of a title originating in the far past, among musty and almost forgotten records. We have re-examined the old law of trespass and *12 sought to ascertain when it could he brought or when trespass on the case alone could be maintained in the search for the true construction of the statute on which, if at all, this action can be upheld.
This suit grew out of an unfortunate accident which happened in Denver in August, 1895. At that time Peter Gumry and Robert C. Greiner were maintaining a hotel called the Gumry Hotel. On that date the boiler which furnished heat and power for the purposes of the business, exploded, wrecked the building, and hurt the plaintiff. It was charged in the complaint that the proprietors of the hotel had employed an unskillful and incompetent servant by the name of Loescher, who had been to their knowledge addicted to the excessive use of intoxicating liquors, and that through the employment of this negligent, unskillful and incompetent servant, and because of the worn out condition of the boiler the explosion occurred, plaintiff was caught in' the falling timbers and received a severe bodily hurt. The complaint states enough to constitute a cause of action for negligence and can be maintained unless another allegation operates to defeat it. It appears from the complaint that Peter Gumry came to his death by the casualty which brought injury to the plaintiff. The suit was begun against Brown, who is the administrator of the decedent. The naked question, therefore, is, whether the wrongdoer being dead, this suit may be maintained against his personal representative. It could not at the common law for it was a well settled principle thereunder, that all personal actions, whether by the representatives of a deceased person or against those of one who was dead, died with the injured party, or as it has been some times expressed in other cases as to the wrongdoer, the wrong and the wrongdoer were buried in the grave together. We take it to be as well settled in the one case as in the other, and that it is equally true where the wrongdoer dies, his personal representative may not be sued for the negligent act any more than could the representatives of the injured person, he being dead, *13 maintain an action against the living wrongdoer. This principle has been often declared and it will add nothing to the force of this opinion nor will it embellish the law to restate the reasons upon which the rule rests. It is enough to announce it and cite the authorities in support of it. Hegarich v. Keddie, 99 N. Y. 258; Boor v. Lowrey, 103 Ind. 468; Stanley v. Bircher, 78 Mo. 245; Hamilton v. Jones, 125 Ind. 176 ; Moe v. Smiley, 125 Pa. St. 136; Vittum v. Gilman, 48 N. H. 416; Jenkins v. French, 58 N. H. 532; Feary v. Hamilton, 140 Ind. 45; Cutter v. Hamlen, 147 Mass. 471; Wade v. Kalbfleisch 58 N. Y. 282.
It is applicable in this state except in so far as it has been modified by legislative enactments. The only statute which controls the case, or under which if any, the suit can be maintained is one which was passed in 1868, and which is found in the Revised Statutes of 1868, p. 682, which is: “ All actions at law whatsoever save and except actions on the case for slander or libel, or trespass for injuriés done to the person, and actions brought for the recovery of real estate, shall survive to and against executors and administrators.” This statute has been continued in the various compilations of the laws of the state, and may be found in the general laws of 1877 as well as the General Statutes of 1883. There is no other statute on the books affecting the question, though the acts of 1872 and 1877 have been often referred to in the argument, though rather for the purposes of the contention that the position of the defendant in error is supported by the legislative construction evidenced by their provisions than because they have any bearing on the question at issue. These acts are reproductions in substance (of what is known as Lord Campbell’s act, which gave a right of recovery for injuries which resulted in the death of the injured party against the surviving wrongdoer. They largely extend the right, and specifically make it applicable to transportation companies, and designate the persons who are entitled to bring suits, and who may reap the benefits of the recovery. They do not in terms cause the action against the wrong *14 doer to survive, for they are silent on the subject, nor can it be properly said that they relate to or provide for the classes of action which are within the terms of the act of 1868, unless it might under some circumstances perhaps be contended, if the construction of the plaintiff in error was admitted, that some actions which survived under the act of 1868, were included within the terms of the acts of 1872 and 1877. The speculation is wholly profitless in view of our conclusion. These later statutes have only been referred to because in their construction, and in the consideration of cases which have arisen under them, the supreme court has construed this statute of 1868 in one or two minor particulars. We believe that we are entirely bound by what that court has decided, and that its intimations in one of the cases, which will be referred to, are in reality conclusive against the contention of the plaintiff in error.
The whole theory on which the case is rested by counsel for the plaintiff in error is based on the construction of the words “ trespass for injuries done to the person.” According to the express letter of the statute, all actions at law survive to and against the representatives of the deceased person save in the four excepted classes. These are slander and libel and actions for the recovery of real estate, which may be left out of view, and the one other class — “ trespass for injuries done to the person.” The whole argument of the plaintiff in error is that the phrase “trespass for injuries done to the person ” ex vigore must be construed to mean only trespass vi et armis, and that when at common law trespass on the case must have been brought, the action still survives. We do not believe that this is the necessary or legitimate construction of that enactment. At the time the act was passed the common-law practice prevailed, and the revisors presumably had present to their recollection the distinctions which then controlled actions. If this was the only construction possible the position of counsel must necessarily be conceded because if it was evident that it was the legislative purpose to cause all actions on trespass to survive, save the *15 technical one of trespass vi et armis, the plaintiff conld maintain his suit. The inquiry therefore is narrow and to the simple point whether these words are to be thus taken. We think not for many reasons. In the first place, it is not necessarily true nor has it been within the last hundred years necessarily true, that trespass for injuries to the person could only be brought in the form vi et armis. The distinction was that where the trespass was done with force and the force was the proximate cause of the injury, trespass vi et armis might be brought. But this principle is neither of universal nor even general application. It is often true that the plaintiff has his remedy and can maintain trespass pure and simple or maintain trespass on the case at his option, even when the wrong done was done with a force which might be said to be the proximate cause of the injury. If the plaintiff sued and alleged the act to have been done with force and concluded contra pacem, and his proof was otherwise but still showed that he might have maintained case, the verdict would be sustained, providing the force was not direct or immediate. Or if it appeared that the negligent act, which though done with force was not done willfully, he might bring case. The very simple illustration of two vehicles driven on the common highway, where the driver in fault ran into the injured person whose buggy was overturned and he thereby injured, the injured party could still maintain case, although the injury was committed with an actual force which might well be said to have been the proximate cause of the damage. This shows that trespass for injuries to the person may be committed by force and yet trespass on the case lie. Howard v. Tyler, 46 Vt. 683; Ricker v. Freeman, 50 N. H. 420; McAllister v. Hammond, 6 Cowen, 342; Wilson v. Smith, 10 Wendell, 324; 1 Chitty on Pleadings, *143.
On this question very elaborate discussions have been had, and the books are full of the refined distinctions on which cases were decided at the common law. Wherever that practice prevailed, we find appeals have been prosecuted for the purpose of reversing a judgment because trespass rather than *16 trespass on the case was brought. It was undoubtedly true that the original definition of trespass was any malfeasance or act whereby one man was injuriously treated or damnified. Such has been the general interpretation of the word and this definition may be supported by text books, lexicographers and authorities. 3 Blackstone Com. book 3, chap. 12; 2 Bouvier’s Law Dictionary title Trespass; 1 Chitty on Pleadings, *186.
We find in the very phraseology of the statute what to our minds is a very satisfactory indication of the legislative purpose. If it had been intended only to exclude trespass vi et armis, it seems to us very clear that the common-law writers who drafted the statute, would have so framed the act. This must be true, if we conclude as we do, that trespass for injuries to the person includes trespass on the case, as well as trespass vi et armis. We have already seen that there may be cases of injuries to the person where trespass on the case was the proper if not the exclusive remedy. Injuries to the person are of several sorts. They may be willfully committed by force when vi et armis will lie, or they may be committed by the negligent or wrongful acts of another when trespass on the case may be the proper if not the exclusive remedy. But it is equally true that where case will lie trespass alone may often be brought. Using the illustration already suggested, if the driver of the colliding vehicle negligently ran into the vehicle driven by the injured person and the force precipitated him on the pavement, whereby he was hurt, case would be proper, and yet, if the act was done willfully trespass pure and simple might be maintained, the proof being sufficient to support it. Since therefore, injuries to the person are of at least several classes, for which either trespass vi ei armis, or trespass on the case will lie, we must conclude it was the purpose of the legislature in passing this act, to except all actions of trespass. We are supported in this conclusion by a direct authority adjudicating the question in New Jersey. We are quite, ready to concede that the construction which was placed on the act in that state pro *17 ceeded on the theory that the statute was remedial, and therefore to be broadly and liberally construed. We are wholly unable however to distinguish any difference between this case and that, which requires either a modified or another construction, or which does not 'mate the reasoning entirely applicable. The chief justice held that the word “ trespass ” in its broad acceptation included the injury which was the foundation of the action in that case. He supported his opinion by a citation of authorities, and gave many illustrations which lent force to the construction. Eyck v. Runk, 31 N. J. Law, 428.
We are likewise supported in this conclusion by the adjudications in the supreme court. It is quite true that most of the cases in that tribunal arose and were brought under the acts of 1872 and 1877, and that the case of the A., T. & S. F. R. R. Co. v. Farrow, 6 Colo. 498, and the D., S. P. & P. R. R. Co. v. Woodward, 4 Colo. 162, neither directly considered nor construed the section under consideration. There is, however, a very much later case which, if not conclusive, is strongly indicative of the views of that court on this question. We are quite ready to concede there seems to be some little difference in the several opinions referred to in regard to the nature or cause of action, which may be the subject-matter of a suit under the acts of 1872 and 1877. It has been suggested by some of the learned judges that those acts were intended to preserve a right of action, rather than to create a new cause of action by giving to the representatives of the deceased the right to sue for the wrong done. This distinction however is not vital, nor are we concerned to determine whether it is to be treated as a new right of action, or as we should prefer to put it, a new right of recovery for injuries done to the intestate as it was expressed in the Vermont case. But we find the case in the 16th Colorado of great assistance in the present inquiry. Kelley v. The U. P. Ry. Co., 16 Colo. 455; Legg v. Britton, 64 Vt. 652.
According to the Kelley case there is a wide gulf separating the act of 1868 from the act of 1872 or that of 1877. *18 The statutes are not in pari materia, but relate to distinct causes of action, and provide distinct remedies. It is quite true in the Kelley case the action was brought on the implied contract. There was no attempt to maintain either trespass vi et armis for the injury done to the person, or trespass on the case for the same injury on the theory of the survival of the action to the representative. In that case the injury did not result in the immediate death of the person hurt, but he survived it for a long period of time, and the- action was subsequently brought by his representative against the railroad company to recover for those things for which the deceased might have recovered other than the one thing, to wit, the death, which is provided for by the act of 1877. The question in that case of course respected the survival of that action. The court very properly held that it was for the injury done to the estate, and not the injury done to the person which was the cause of action and that under the act of 1868, this right of action survived. In stating this distinction the learned jurist who wrote the opinion, said that the act of 1868 was intended to prevent the abatement of certain causes of action which had already accrued, and since this suit was for a cause of action which accrued in the lifetime of the deceased, and for causes which gave him the right living to maintain the suit, the cause of action which had thus accrued did survive. It seems to us that this course of reasoning is conclusive on the present case. If the act of 1868 only intended to preserve causes of action which accrued in the lifetime of the decedent, then when death results from the wrong done, the act of 1868 does not cause the action to survive. This rule would be applicable in the case which we suggested in the antecedent part of the opinion of the colliding of two vehicles on a public highway, even where the act was willfully done, and where it may have been accompanied by force, if it resulted in the-death of the injured person, no cause of action on the case or one vi et armis could survive because none accrued to the deceased in his lifetime. Continuing this same course *19 of reasoning it follows that if the negligent act which brought injury to the plaintiff proceeded from the negligence of another who was killed by the act which injured the plaintiff, the estate of the wrongdoer cannot be sued because the action did not accrue in his lifetime, but the wrong and the wrongdoer died together. The numerous authorities, and we have been cited to none to the contrary to which we advert, sustain the proposition that suit may not be brought against the wrongdoer under the act of 1868 because as the supreme ■court has said, it did not accrue in the lifetime of the wrongdoer, and not having thus accrued it may not survive. This principle is illustrated, and may be said to be supported by very considerable authority. Kellow, Admr., v. Central Iowa Ry. Co., 68 Ia. 480; Fowlkes v. Nashville & Decauter R. R. Co., 9 Heiskell, 829; Lubrana v. Atlantic Mills, 32 Atlantic Rep. 205; Holton v. Daly, Admx., 106 Ill. 131; Munal v. Brown, 70 Fed. Rep. 967; V. & M. R. R. Co. v. Phillips, 64 Miss. 693; Mo. Pac. R. R. Co. v. Bennett’s Estate, 47 Pac. Rep. 183; Hindry v. Holt et al., 24 Colo. 464.
We are therefore of the opinion that the action was not maintainable, and the demurrer was properly sustained. The judgment will accordingly be affirmed.

Affirmed.