Wilson, J.
April 20,1892, in the district court of Boulder county, one Friend E. Wright recovered judgment against the sheriff of the county in an action instituted under the provisions of section 1868, General Statutes, for three times the value of certain exempt property alleged to have heen taken by said sheriff under writ of attachment against said Wright. On August 4, following, Wright assigned in writing the judgment and the claim upon which it was rendered to Joseph M. Mumford, appellant in this cause. Upon appeal to this court by the sheriff, the judgment was at the September term of the court, *215 1893, reversed, and the ease remanded. Autrey v. Wright, 4 Colo. App. 179. Upon a retrial in the district court, Wright again recovered judgment against the sheriff, on January 3, 1895. On February 28, immediately following, Wright assigned in writing this judgment to John T. Wright, the appellee herein, and this assignment was on July 29,1895, filed in the office of the clerk of the district court. Thereafter, the sheriff satisfied the judgment by paying the money due thereon into court. On November 29, 1895, the appellant filed his assignment in the office of the clerk of the district court, and thereupon, on the same day, received from the •clerk the money so paid by the sheriff. John T. Wright thereupon instituted this suit to recover the money from the appellant on the ground that it had been had and received by him for the use and benefit of him, plaintiff. Upon trial, after the introduction of testimony, the court instructed the jury to find a verdict for the plaintiff. This was accordingly done, judgment was rendered thereon, and from this defendant appeals. The direction of the verdict by the court was based expressly upon the ground, as appears from the record, that the claim upon which the judgment was founded was not assignable, and that the assignment to Mumford was not valid.
The judgment which was assigned by Wright to Mumford having been reversed, set aside, and held for naught, it is unquestionably true that Mumford could have no' right or claim to the judgment subsequently rendered upon the second trial, unless the assignment was sufficient to vest in him the ownership of the claim or cause of action upon which the judgment was based. This is the controlling question in this case, and is one which presents considerable difficulty in its determination. It has never been directly decided in this state, and in fact, there are but few adjudications which can be of assistance to us.
Under the rigorous harshness of the common law a judgment debtor was allowed no property exemptions, — the full pound of flesh was exacted. This rule has long since been *216 modified, however, by the adoption in almost every country of exemption statutes, which are founded upon beneficent and weighty considerations of humanity and public policy. In this, like other states, since its organization as a territory there have been in existence statutes which exempted to heads of families certain personal property from seizure and' sale under execution and judgment. It is expressly held by all the authorities, however, that the privilege is a personal one. It can be exercised only by the debtor, except in some cases where by statute it is provided that in ease of his absence or inability from some cause it may be asserted for him. Waples, Homestead and Exemptions, p. 763, et seq. It is also a privilege which he may assert and exercise or not as he chooses. The law does not assert it for him. The statute simply gives him the right, and it depends upon himself whether or not he exercises it. Ordinarily, therefore, a claim of this character would seem to lack some of the elements which would be essential to assignability. It is a claim which may be said to have no certainty about it, and no potential existence. It is in fact well settled that the right to claim exemption is not assignable. It is contended, however, that a right of action against an officer on account of his violation of the exemption statute, the exemption privilege having been asserted, is a different kind of a claim, and is assignable. Upon principle this would not be true, unless it should be by virtue of some statute permitting it. There is no statute prescribing exactly what claims or dioses in action may be subject to assignment, and what shall not be. The test of assignability, according to the great weight of authority, is whether or not the cause of action would survive to the executors or administrators of the party in case of his death. If it would, then the claim would be assignable; if not, the converse would be true. This is the general rule, but not universally nor strictly true, because by statute some causes of action are made to survive, which are not assignable. Our own supreme court says, “The general rule is that assignability and descendibility go hand in hand.” Home Ins. Co. v. Rail *217 road Co., 19 Colo. 49. As to whether this cause of action would descend to executors and administrators, we are cited to section 3635, Gen. Stats, which reads as follows: “ All actions at law whatsoever, save and except actions on the case for slander or libel, or trespass for injuries done to the person, and actions brought for the recovery of real estate, shall survive to and against executors and administrators.” It is earnestly insisted by appellant that even if, under the general rule of law, the claim and cause of action in question does not come within that class of torts which are held to be assignable, in any event the statute above quoted is conclusive of the question, the action instituted against the sheriff not being within the exceptions therein enumerated.
Torts may be divided into two general classes, the first, designated as property torts, embracing all injuries and damages to property, real or personal; the second, known as personal torts, including all injuries to the person, whether to reputation, feelings, or to the body. A tort which is not an injury to property is a personal tort. Under the established rules, independent of statute, an action upon a personal tort did not survive to an executor or administrator, and hence under the test rule was not assignable. That the claim of Friend E. Wright against the sheriff for the seizure of his exempt property was for a personal tort cannot be denied. There was no injury or damage to his property for which he was seeking compensation. If he had seen fit, he could have instituted an action in replevin to recover his property, with the ordinary damages for its unlawful taking. The right to sue for and recover the triple damages was not based upon any injury to Ids property, but rather upon the injury to him by the invasion of a right which the statute says should be inviolable. He might also, if he had desired, simply have instituted a suit for single damages, and waived any right or claim which he had to triple damages. Does the statute, however, change the ordinary rule in this respect, and under it, even though the action in this case was for a personal tort, would it survive to the personal representatives of the de *218 ceased ? It will be readily seen that the chief difficulty lies in determining the exact meaning of the words, “ trespass for injuries done to the person.” In a recent case, this court in construing this section held that these words as there used could not be construed to mean only trespass vi et armis, but that the exception embraced also torts for which trespass on the case must have been brought. Letson v. Brown, 11 Colo. App. 11. We now go further, and hold that the words were intended to embrace and do embrace all actions for personal torts, unless specially provided otherwise by statute. In our opinion, the legislature had in view upon the adoption of that statute the common-law distinction then prevailing between personal and property torts, and desired to permit actions based upon the latter to survive, on the ground that they were an injury to actual property, the wasting of an estate, the damage to which was susceptible of accurate determination and measurement; whilst the old rule should still prevail as to actions based upon the former character of torts, for the reason that the individual to whom the tort was personal having died, the action should die with him. It looks unreasonable to suppose that the lawmaking power intended to say that an action should not survive for physical injuries done to the person of an individual whereby his capacity to earn property and to support a family might be materially injured, if not destroyed, and at the same time an action for malicious prosecution, for instance, should survive. If there existed any doubt whatever as to the correctness of our position it would be entirely removed, however, hi this case by another consideration. As we have seen, a right of exemption is given to the head of a family for the benefit of himself and family, and section 1867, Gen. Stats, expressly provides that in case the head of a family shall die, desert, or cease to reside with the same, his family shall be entitled to receive all benefits and privileges which are in the exemption statutes conferred upon the head of a family. It follows, therefore, that this character of a claim, or action based upon it, cannot survive to the executor or administra *219 tor. For if this were true, it would become a part of the assets of the decedent’s estate, and would be subject to the payment of his debts. The statute however expressly provides that it shall descend to his family, and to his family only.
Even without section 1867, it would be unreasonable to hold that this cause of action survived to executors and administrators. The exemption being because the debtor is the head of a family, its primary and principal object and purpose is to benefit and protect, or as the law writers express it, conserve, the family. Now, if the action should survive to the executor or administrator of a head of a family, the proceeds would be applied to the payment of his debts, the very object which the statute is intended to prevent. The family of the poor debtor would thus be wholly deprived of the benefits which it was the beneficent and sole purpose of the law to extend to them.
The complaint is also attacked as being insufficient upon the ground that it does not allege that the defendant was indebted to the plaintiff, nor that defendant promised to pay any sum to plaintiff, nor any facts showing a privity between the plaintiff and defendant. We think the complaint is sufficient. When a person receives the money of another, and applies it to his own use, the law implies a promise to repay it, and this implied promise need not be alleged. Durnond v. Carpenter, 3 Johns. 183; Byxbie v. Wood, 24 N. Y. 607. If a promise to pay is implied, this coupled with the allegation contained in the complaint that the defendant has not paid the same, nor any part thereof, and that the same is now due and unpaid, is a sufficient allegation of an indebtedness. It is also held that where one receives the money of another, and has not the right conscientiously to retain it, as was the question sought to be determined by this suit, a privity between the true owner and the receiver will be implied, as well as a promise to repay it. Caussidiere v. Beers, 2 Keys, 198; Kreutz v. Livingstone, 15 Cal. 344.
Appellant also urges that a suit could not be maintained *220 against him, and that if the plaintiff had any cause of action, it was against either the sheriff or the clerk. The rule is that an action for money had and received is proper when the recovery is sought of money which defendant has received, and refused to pay on demand to the plaintiff who is entitled to it. Stanwood v. Sage, 22 Cal. 516; Tutt v. Ide, 3 Blatchf. 249.
And we see no reason why the fact that the party claimed to have received it rightfully and under a claim of its ownership, should make any difference in the rule. This form of action is provided for cases where money has been received by one person, which rightly and justly belongs to another.
The judgment was correct and will be affirmed.

Affirmed.