'SWIFT COMPANY *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

Argued March 5th, 6th, 1884.—Decided March 17th, 1884.

*Internal Revenue—Voluntary Payment.*

Under the act of July 14th, 1870, c. 255, § 4, 16 Stat. 257, the proprietor of friction matches who furnished his own dies, was entitled to a commission of ten per cent. payable in money upon the amount of adhesive stamps over $500 which he at any one time purchased for his own use from the Bureau of Internal Revenue. *Swift Company* v. *United States*, 105 U. S. 691, considered and affirmed.

A payment made to a public officer in discharge of a fee or tax illegally exacted

is not such a voluntary payment as will preclude the party from recovering it back.

A course of business and a periodical settlement between the commissioner of internal revenue and a regular periodical purchaser of revenue stamps entitled by statute to commission on his purchases payable in money, which shows that the commissioner asserted and the purchaser accepted that the business should be conducted upon the basis of payments of the commissions. in stamps at their par value instead of in money, does not preclude the purchaser from asserting his statutory right, if he had no choice, and if the only alternative was to submit to an illegal exaction or discontinue his business.

When the commissioner of internal revenue adopted a rule of dealing with ·purchasers of stamps which deprived them of a statutory right to be paid their commissions in money, and obliged them to take them in stamps, and made known to those interested that the rule was adopted and would not be changed, the rule dispensed with the necessity of proving, in each instance of complying with it, that the compliance was forced.

In a course of dealing between a regular purchaser through a series of years of stamps and the commissioner of internal revenue, where a separate written order was given for each purchase, and the commissioner answered each by sending the stamps asked for, " in satisfaction of the order," and where remittances were made from time to·time by the purchaser on a general credit, which the commissioner so applied ; and where accounts were made and balanced monthly between the parties ; and where in each transaction the commissioner withheld from the purchaser a part of the commission due him by law ; the right of action accrued in each transaction as the commission was withheld, and the Statute of Limitations in each case began to run at that time.

This case was heard at October Term, 1881, on a demurrer to the petition. The judgment of the Court of Claims sustaining the demurrer was overruled, and the case remanded for a hearing on the merits, 105 U. S. 691. The Court of Claims found that the claimants from 1870 to 1878, were manufacturers of matches, furnished their own dies, and gave bonds for payment of stamps furnished within sixty days after delivery under the statute. Each order was for stamps of a stated value. The commissioner from the commencement held that the amount allowed by statute was to be computed as commissions upon the amount of money·paid. All business between the parties was transacted and all accounts stated and adjusted by the accounting officers on that basis. The manner in which the parties did business under that ruling is stated below, in the opinion of the court. The Court of Claims held that the facts

showed an acquiescence by the claimant in the construction of the statute by the commissioner, and such repeated settlements and voluntary acceptances of stamps in payment of their commissions in lieu of money, as to preclude them from recovering, and gave judgment in favor of the United States. From this judgment the corporation appealed. On the hearing in this court the argument was on the following points : 1st. Whether the former construction of the statute was correct ; 2d. Whether the long acquiescence of the company in the construction given to the statute by the commissioner, and its frequent and regular settlement of its accounts on that basis and acceptance of stamps in lieu of money precluded it from disputing the legality of the transactions ; and 3d. What was the effect of the failure to protest against the settlements which it made under the rulings of the commissioner.

*Mr. J. W. Douglass* and *Mr. Samuel Shellabarger* for appellant.

*Mr. Solicitor-General* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On a former appeal in this case a judgment of the Court of Claims dismissing the claimant's petition on demurrer was reversed. *Swift Company* v. *The United States*, 105 U. S. 691.

It was then held that the right construction of the internal revenue acts, act of July 1st, 1862, c. 119, § 102, 12 Stat. 477; act of March 3d, 1863, c. 74, 12 Stat. 714; act of June 30th, 1864, c. 173, 13 Stat. 294, 302; act of July 14, 1870, c. 255, § 4, 16 Stat. 257, required the payment of the commission allowed to dealers in proprietary articles purchasing stamps made from their own dies and for their own use, to be made in money, calculated at the rate of ten per cent. upon the whole amount of stamps furnished, and not in stamps at their face value calculated upon the amount of money paid. In response to a suggestion in argument by the solicitor-general we now repeat the conclusion then announced. We had no doubt upon the point at the time; we have none now. The distinction was then pointed out between the rule applicable to the sale of

other adhesive stamps and those sold to proprietors of articles named in Schedule C, made from their own dies. In the former, the commissioner of internal revenue had a discretion to fix the rate of commission so as not to exceed five per cent., and in exercising that discretion could make the commission payable in stamps as an element in the rate itself. As to the latter, no such discretion was given. The statute fixed the rate of the commission absolutely. The practice of the bureau confused the two cases and ignored the distinction between them. We do not perceive how the substitution of the word " commission " in the act of 1863 for the word " discount " in the proviso to § 102 of the act of 1862 affects the question; for the latter obviously refers to a sum to be deducted from the money paid for the stamps, and not from the stamps sold, while the former equally denotes a sum to be paid to the purchaser on a purchase of stamps at par, both being calculated as a percentage upon the amount of the purchase money, and the necessary implication as to both being that they are to be paid in money. However the words in some applications may differ in verbal meaning, they represent in the transactions contemplated by these statutes an identical thing.

The present appeal is from a decree rendered in favor of the United States, upon a finding of facts upon issue joined; and presents two questions: first, whether the course of dealing between the parties now precludes the appellant from insisting upon his statutory right to require payment of his commissions in money, instead of stamps; and second, whether, if not, part of his claim did not accrue more than six years before suit brought, so as to be barred by the statute of limitations.

On the former appeal we decided that the course of dealing set forth in the petition, which was admitted by the demurrer, did not bar the claimant's right to recover; holding that it did not appear on the face of the petition that the appellant voluntarily accepted payment of his commissions in stamps at par, instead of money, nor that he was willing to waive his right to be paid in that way; and that " it would be incumbent on the government, in order to deprive him of his statutory right, not only to show facts from which an agreement to do so," that is

an agreement to waive his statutory right, "might be inferred, but an actual settlement based upon such an understanding."

The decree brought up by the present appeal proceeds upon the basis that the facts as found by the Court of Claims establish such an agreement and such a settlement.

The course of dealing found to exist and to justify this conclusion may be briefly but sufficiently stated to have been as follows: The appellant gave the bonds from time to time necessary under the statute to entitle it to sixty days' credit on its purchases of stamps. The condition of this bond was that the claimant should, on or before the tenth day of each month, make a statement of its account upon a form prescribed by the Internal Revenue Bureau, showing the balance due at the commencement of the month, the amount of stamps received, the amount of money remitted by it during the month, and the balance due from it at the close of the month next preceding; and also that the company should pay all sums of money it might owe the United States for stamps delivered or forwarded to it, according to its request or order, within the time prescribed for payment for the same according to law, that is, for each purchase within sixty days from the delivery of the stamps.

Each purchase was upon a separate written order, specifying the amount desired, for example, $3,000 dollars' worth of match stamps. The commissioner thereupon forwarded stamps of the face value of $3,300, with a letter stating that they were in satisfaction of the order referred to, and inclosing a receipt on a blank form, but filled up, except date and signature, which was an acknowledgment of the receipt of the specified amount of stamps in satisfaction of the order. The receipt was signed by the claimant and returned. The claimant from time to time made remittances of money in authorized certificates of deposit, in sums to suit its convenience, for credit generally, and received in reply an acknowledgment stating that credit had accordingly been given on the books of the internal revenue office on account of adhesive stamps; for instance, by certificate of deposit, $2,500; commission at ten per cent., $250; total, $2,750; and authorizing the claimant to take credit therefor on

the prescribed form for the monthly account current. These accounts were made out by the claimant monthly on blank forms prescribed and furnished by the commissioner, in which the United States were debited with all items of money remitted and with commissions calculated on each remittance at ten per cent., and credited with balance from previous month and stamps received on order in the interval, and with the balance due the United States. This account was by a memorandum at the foot stated to be correct, complete, and true, and signed by the claimant. These returns, with corresponding statements by the commissioner, were settled and adjusted by the accounting officers of the Treasury Department every quarter, and notice of the settlement given to the claimant. The remittances were so made that while not corresponding to any particular order for stamps, they nevertheless covered all stamps the orders for which had been given sixty days or more previously, so that the claimant was always indebted to the United States for all stamps received within the past sixty days, but not for any received more than sixty days previously.

It must be admitted that this course of dealing and periodical settlement between the parties, whether the accounts be regarded as running merely or stated, shows clearly enough that the business was conducted upon the basis, that the claimant was to receive his commissions in stamps at their par value, and not in money, and that this was asserted by the Internal Revenue Bureau, and accepted by the appellant.

But in estimating the legal effect of this conduct on the rights of the parties there are other circumstances to be considered.

It appears that prior to June 30th, 1866, the leading manufacturers of matches, among whom was William H. Swift, who, upon the organization of the claimant corporation in 1870, became one of its large stockholders and treasurer, made repeated protests to the officers of the Internal Revenue Bureau against its method of computing commissions for proprietary stamps sold to those who furnished their own dies and designs; although it did not appear that any one in behalf of the claimant corporation ever, after its organization, made any such pro-

test or objection, or any claim on account thereof, until January 8th, 1879. On that date, the appellant caused a letter to be written to the commissioner asserting its claim for the amount, afterwards sued for, as due on account of commissions on stamps purchased. To this, on January 16th, 1879, the commissioner replied, saying that the appellant had received all commissions upon stamps to which it was entitled, "provided the method of computing commissions, which was inaugurated with the first issue of private-die proprietary stamps and has been continued by each of my predecessors, is correct. I have heretofore decided to adhere to the long-established practice of the office in this regard until there shall be some legislation or a judicial decision to change it." And the claim was therefore rejected.

From this statement it clearly appears that the Internal Revenue Bureau had at the beginning deliberately adopted the construction of the law upon which it acted through its successive commissioners, requiring all persons purchasing such proprietary stamps to receive their statutory commissions in stamps at their face value, instead of in money; that it regulated all its forms, modes of business, receipts, accounts, and returns upon that interpretation of the law; that it refused on application, prior to 1866, and subsequently, to modify its decision; that all who dealt with it in purchasing these stamps were informed of its adherence to this ruling; and finally, that conformity to it on their part was made a condition, without which they would not be permitted to purchase stamps at all. This was in effect, to say to the appellant, that unless it complied with the exaction, it should not continue its business; for it could not continue business without stamps, and it could not purchase stamps except upon the terms prescribed by the commissioner of internal revenue. The question is, whether the receipts, agreements, accounts, and settlements made in pursuance of that demand and necessity, were voluntary in such sense as to preclude the appellant from subsequently insisting on its statutory right.

We cannot hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no

choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid or other value parted with, under such pressure, has never been regarded as a voluntary act within the meaning of the maxim, *volenti non fit injuria.*

In *Close* v. *Phipps,* 7 M. & Gr. 586, which was a case of money paid in excess of what was due in order to prevent a threatened sale of mortgaged property, Tindal, C. J., said : " The interest of the plaintiff to prevent the sale, by submitting to the demand, was so great, that it may well be said the payment was made under what the law calls a species of duress." And in *Parker* v. *Great Western Railway Company,* 7 M. & Gr. 253, the wholesome principle was recognized that payments made to a common carrier to induce it to do what by law, without them, it was bound to do, were not voluntary, and might be recovered back. Illegal interest, paid as a condition to redeem a pawn, was held in *Astley* v. *Reynolds,* 2 Stra. 915, to be a payment by compulsion. This case was followed, after a satisfactory review of the authorities, in *Tutt* v. *Ide,* 3 Blatchf. 249 ; and in *Ogden* v. *Maxwell,* 3 Blatchf. 319, it was held that illegal fees exacted by a collector, though sanctioned by a long-continued usage and practice in the office, under a mistaken construction of the statute, even when paid without protest, might be recovered back, on the ground that the payment was compulsory and not voluntary. And in *Maxwell* v. *Griswold,* 10 How. 242–256, it was said by this court : " Now it can hardly be meant, in this class of cases, that to make a payment involuntary, it should be by actual violence or any physical duress. It suffices, if the payment is caused on the one part by an illegal demand, and made on the other part reluctantly, and in consequence of that illegality, and without being able to regain possession of his property, except by submitting to the payment." To the same effect are the *American Steamship Company* v. *Young,* 89 Penn. St. 186 ; *Cunningham* v. *Monroe,* 15 Gray, 471 ; *Carew* v. *Rutherford,* 106 Mass. 1 ; *Preston* v. *Boston,* 12 Pick. 7. In *Beckwith* v. *Frisbie,* 32 Vt. 559–566, it was said : " To make the payment a voluntary one, the parties

should stand upon an equal footing." If a person illegally claims a fee *colore officii*, the payment is not voluntary so as to preclude the party from recovering it back. *Morgan* v. *Palmer*, 2 B. & C 729. In *Steele* v. *Williams*, 8 Exch. 625, Martin, B., said : " If a statute prescribes certain fees for certain services, and a party assuming to act under it insists upon having more, the payment cannot be said to be voluntary." " The common principle," says Mr. Pollock, Principles of Contract, 523, " is, that if a man chooses to give away his money, or to take his chances whether he is giving it away or not, he cannot afterwards change his mind ; but it is open to him to show that he supposed the facts to be otherwise, or that he really had no choice." Addison on Contracts, *1043; *Alton* v. *Durant*, 2 Strobh. 257.

No formal protest, made at the time, is, by statute, a condition to the present right of action, as in cases of action against the collector to recover back taxes illegally exacted ; and the protests spoken of in the findings of the Court of Claims as having been made prior to 1866 by manufacturers of matches and others requiring such stamps, are of no significance, except as a circumstance to show that the course of dealing prescribed by the commissioner had been deliberately adopted, had been made known to those interested, and would not be changed on further application, and that consequently the business was transacted upon that footing, because it was well known and perfectly understood that it could not be transacted upon any other. A rule of that character, deliberately adopted and made known, and continuously acted upon, dispenses with the necessity of proving in each instance of conformity that the compliance was coerced. This principle was recognized and acted upon in *United States* v. *Lee*, 106 U. S. 196–200, where it was held that the officers of the law, having established and acted upon a rule that payment would be received only in a particular mode, contrary to law, dispensed with the necessity of an offer to pay in any other mode, and the party thus precluded from exercising his legal right was held to be in as good condition as if he had taken the steps necessary by law to secure his right.

For these reasons we are of opinion, that the Court of Claims

erred in rendering its judgment dismissing the appellant's petition, and thus disallowing his entire claim. But we are also of opinion that he is not entitled to recover for so much of it as accrued more than six years before the bringing of his suit. There was nothing in the nature of the business, nor in the mode in which it was conducted, nor in the accounts it required, that prevented a suit from being brought, for the amount of commissions withheld, in each instance as it occurred and was ascertained. The recovery must therefore be limited to the amount accruing during the six years next preceding November 21st, 1878, which, according to the findings of the Court of Claims, is $28,616, and for that amount judgment should have been rendered by the court in favor of the appellant.

*The judgment of the Court of Claims is reversed and the cause remanded with directions to render judgment in favor of the appellant in accordance with this opinion.*