## EDWARDS, Internal Revenue Collector, v. CHILE COPPER CO.

(Circuit Court of Appeals, Second Circuit.    April 27, 1921.)

### No. 167.

1. **Internal revenue** ☞38—**Corporation paying stamp tax under protest held entitled to maintain action for its recovery.**

A corporation, having offered its bonds for sale, received installments thereon from subscribers, and being obligated to issue the bonds on receipt of final payment on a specified date, which, to avoid a threatened heavy penalty, paid under protest a tax for stamps required to be affixed to the bonds by an erroneous ruling of the Commissioner of Internal Revenue, *held* not to have made such payment voluntarily, and entitled to maintain an action against the collector for its recovery.

2. **Internal revenue** ☞19(1)—**Bonds of corporation, issued to take up temporary bond, not subject to stamp tax.**

War Revenue Act Oct. 3, 1917, § 800 (Comp. St. 1918, § 6318a), imposing a stamp tax, inter alia, on bonds issued by corporations, and effective from December 1, 1917, *held* not to apply to bonds issued by a corporation after that date as a substitute for and to take up a temporary bond for the amount of the entire issue, which had been issued a year before as a valid obligation and delivered to the trustee to secure subscribers to the bonds, who had paid a 50 per cent. installment on their subscriptions and were entitled to delivery of smaller denomination bonds on payment of the final installment a year later.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Chile Copper Company against William H. Edwards, Collector of Internal Revenue, Second New York District, to recover $17,500 paid as a stamp tax on certain bonds. A demurrer was interposed and overruled. Judgment was entered for plaintiff. Defendant brings error. Affirmed.

Francis G. Caffey, U. S. Atty., of New York City (Vincent H. Rothwell and Richard S. Holmes, Sp. Asst. U. S. Attys., both of New York City, of counsel), for plaintiff in error.

Root, Clark, Buckner & Howland, of New York City (Elihu Root, Jr., H. H. Nordlinger, Clarence M. Tappen, and Alexander B. Royce, all of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On March 9, 1917, plaintiff below authorized an issue of bonds and executed a trust agreement securing them, by the action of its board of directors. On the same day the bonds were underwritten by its bankers. On April 16th the issue of bonds and the execution of the trust agreement was ratified by the stockholders, and on the following day the right to subscribe to this issue, $35,000,000, series A, was offered to the stockholders. On May 1st the underwriters requested the plaintiff below to issue a temporary $35,000,000 series A bond to the Guaranty Trust Company of New York. Such issue was authorized by the directors, and a trust agreement executed on May 3d, and a temporary bond was executed on

May 24th, and delivered to the trust company May 25th, the following day. A record was made in the books of the plaintiff below, showing this liability for $35,000,000, and the unpaid installments as accounts receivable. On May 29th the first installment of 50 per cent. on the purchase price of the bonds was paid by the stockholder subscribers, and installment receipts, binding the company to deliver permanent bonds on payment of the second installment, were given on May 29, 1918. Between June 1st and 7th the first installment of 50 per cent. purchase price of the bonds was paid by the underwriters, who were forthwith given installment receipts, likewise binding the company to deliver permanent bonds on payment of the second installment of May 29, 1918. The United States entered the war on April 6, 1917, and on October 3d passed the War Revenue Act. On December 1st the stamp tax under the War Revenue Act became effective. On May 9, 1918, the permanent bonds were executed and delivered to the Guaranty Trust Company, and on May 29th the second installment of 50 per cent. of the purchase price of the bonds was paid by the receipt holders, and permanent bonds were delivered to them. The Revenue Act of October 3, 1917, provided that on and after December 1, 1917, there shall be levied, collected, and paid—

"for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person, corporation, partnership or association who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule." Comp. St. 1918, § 6318a.

And Schedule A, referring to stamp taxes, provides:

"Bonds of indebtedness: Bonds, debentures, or certificates of indebtedness issued on and after the first day of December, nineteen hundred and seventeen, by any person, corporation, partnership, or association, on each $100 of face value or fraction thereof, 5 cents." Section 6318h.

The Commissioner of Internal Revenue contended that the issue of the bonds in question occurred when the permanent and engraved bonds were handed to the subscribers and underwriters on May 29, 1918, after the effective date of the stamp tax, and that therefore the bonds in question were taxable. Adhering to this contention, the Commissioner of Internal Revenue imposed a tax of $17,500 which tax was paid under protest. It was held below that the bonds were issued at a date prior to the effective date of the stamp tax, and that the bonds were not taxable, and the demurrer to the complaint was overruled, and judgment for the plaintiff below followed.

[1] It is urged upon us by the defendant below that the collector is not a proper party defendant. The argument is that the collector has delivered to the treasury of the United States all moneys received from the plaintiff below, and that there is no obligation on him to make a refund. The complaint alleges that there is $17,500, which was received by the defendant below and still retained by him without right,

and that he refuses and continues to refuse to pay the same, or any part thereof, although payment has been duly demanded, and that he now holds money to the use of the plaintiff below. By the demurrer this allegation is deemed to be admitted; and, further, it is contended that there was no duress exercised by the collector in the collection of this tax, and therefore the action is not maintainable. But the complaint alleges that on May 23, 1918, when the plaintiff below found itself obligated to deliver the bonds to subscribers within six days, the Commissioner ruled that the stamps must be affixed to the bonds so delivered. Under the circumstances, there was no way, other than the purchase of the stamps, by which the plaintiff below could avoid a risk of the imposition of a fine amounting to $3,500,000, if it refused the payment of the tax pursuant to the ruling of the collector. Title 8 of the Act of October 3, 1917 (Comp. St. 1918, § 6318a et seq.). Under the circumstances, the prudent thing to be done was to pay the tax under protest, as was done, and seek to maintain an action to recover such tax so paid. If the collector had no right to collect the tax, his doing so in the name of the government did not protect him. Atchison, etc., Ry. Co. v. O'Connor, 223 U. S. 280, 32 Sup. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050. One who denies the legality of the tax should have a color of certain remedy after payment under protest. He cannot interfere by injunction with the government's collection of its revenue, and the action at law to recover back what he has paid is the alternative left. Atchison, etc., Ry. Co. v. O'Connor, supra. The citizen who is obligated to pay the tax which he deems illegal may do so, even though to his disadvantage, by paying under protest and later asserting his legal right of protest by the liberty of promptly bringing suit for its recovery. He has an equal right to do this, as he might have the legal right to interpose a defense for the collection of the tax. The language of Mr. Justice Matthews in Swift & Co. v. United States, 111 U. S. 22, 4 Sup. Ct. 244, 28 L. Ed. 341, is pertinent:

"The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction, or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid, or other value parted with, under such pressure, has never been regarded as a voluntary act, within the meaning of the maxim, 'Volenti non fit injuria.'" 111 U. S. 28, 29, 4 Sup. Ct. 247, 28 L. Ed. 341.

As it was said in Maxwell v. Griswold et al., 51 U. S. (10 How.) 241, 13 L. Ed. 405:

"Now, it can hardly be meant in this class of cases that, to make a payment involuntary, it should be by actual violence, or any physical duress. It suffices if the payment is caused on the one part by an illegal demand, and made on the other part reluctantly and in consequence of that illegality, and without being able to regain possession of his property, except by submitting to the payment." 51 U. S. (10 How.) 255, 13 L. Ed. 405.

In Edwards, etc., v. Wabash Ry. Co., 264 Fed. 610, this court permitted a recovery where a tax was imposed illegally by a collector under the same Stamp Tax Act, holding that under the statute, where a tax is imposed upon the original issue, it is intended not to be imposed

on transfer stock certificates, in which case a tax is imposed on the holder, and that a corporation which had paid a tax on the face value of its total capital stock is not liable to a further stamp tax on issuing, pursuant to articles of incorporation, certificates in place of stock which carry privilege of conversion into another form. We think that under these authorities, if the tax was illegally imposed, the plaintiff below has sought the proper remedy, and is entitled to recover, and that the defendant below, the collector, is a proper party defendant.

[2] The resolution authorizing the execution of the temporary bond provided that the company—

"should issue and deliver the same to the Guaranty Trust Company of New York, such bond to be held by the said Guaranty Trust Company of New York substantially under the terms expressed in the following draft letter:

" 'New York City, May 24, 1917.—

" 'Guaranty Trust Company of New York, 140 Broadway, New York City—Gentlemen: Chile Copper Company hands you herewith its collateral trust gold bond series A for $35,000,000; principal amount issued under and secured by the trust agreement, dated April 1, 1917, between Chile Copper Company, Guaranty Trust Company of New York, as trustee, and Chile Exploration Company.

" 'The company is issuing bearer receipts to the principal amount of $35,000,000, which are exchangeable at your office (upon the terms and conditions stated in such receipts) for an equal principal amount of said collateral trust gold bonds series A.

" 'The $35,000,000 bond transmitted herewith is delivered to you, so that, without further action by Chile Copper Company, the holders of such receipts may be in a position to obtain the bonds in accordance with the terms and conditions of the receipts. * * * ' "

The installment receipts, issued when payment was made, provided:

"The bonds above mentioned have been issued by the company and deposited with Guaranty Trust Company of New York, to be held by said trust company pending the payment of such remaining installment pursuant to the provisions hereof."

We think that, within the meaning of the statute, bonds were issued when, on June 7, 1917, the first installment of the subscribing stockholders and underwriters had been paid in full. The bond had been delivered to and authenticated by the Guaranty Trust Company prior thereto, on April 1, 1917. It is clear that there was a binding obligation thereon when the first installment was paid. If, on June 7th, the stamp tax was effective, a tax would have been imposed upon this temporary bond, and if, at a later date, the engraved bonds were substituted therefor, no tax could be imposed. Edwards, etc., v. Wabash Ry., supra. The intention of the parties is clear. The Guaranty Trust Company was to hold the $35,000,000 temporary bond in trust as security for the amount paid by the subscribers and underwriters until the payment of the second installment and the delivery of the permanent bonds. About June 1st, the underwriters advanced, on the faith of this security, subscriptions of over $17,000,000, and the intention was that they were to receive permanent small denomination engraved bonds about a year later, when the final payment was made. The issuance of the temporary bond was for the purpose of security only. The plaintiff below entered the entire amount of the bond as an outstanding obliga-

tion. The book entry shows that the maker intended to pass title to the temporary bond of the Guaranty Trust Company, and intended that when it did so such bond should be an obligation of the company, issued and outstanding. And when the underwriters and subscribers paid money on the faith of this security, and when receipts therefor in the form mentioned above were given, a binding obligation to the extent of the money so advanced was created. The underwriters and subscribers, in so advancing the money, could rely implicitly upon the covenants and provisions of the trust agreement and the terms of the temporary bond, which was given as security. The temporary bond was properly issued and duly authenticated. The Guaranty Trust Company did not hold it as a mere agent. It was the bearer and holder of the bond. By the terms of the transaction, the authentication upon the bond was conclusive evidence hat the bond had been issued, and that the Guaranty Trust Company was entitled to the benefit of the trust created by the trust agreement. The Guaranty Trust Company took as trustee for itself and its fellow underwriters and subscribers. This was an issue. The liability to a stamp duty, as well as the amount thereof, is determined by the terms found in the instrument. United 'States v. Isham, 17 Wall. 496, 21 L. Ed. 728.

Under the British Finance Act of 1899, which imposed a stamp duty, it was said in Attorney General v. Liverpool Corp. [1902] 1 Kings Bench, 411, in a case somewhat parallel to the one at bar, where stamps upon bonds were involved (the stock of the city of Liverpool being the equivalent of bonds), and where a contract had been entered into whereby the corporation was bound to deliver the bonds upon fulfillment of certain conditions, and script certificates redeemable for permanent certificates had been issued, and where the question of what was meant by issue of the securities was presented, it was said that—

"* * * By the time the corporation had issued the necessary certificates, whereby they bound themselves, upon the creditor complying with the remainder of the terms of the allotment, to issue the stock to him and to enter him as a stockholder, they had, in my opinion, issued the loan capital."

It was never intended by the statute to impose the tax on the exchange of the permanent bonds for temporary bonds, or upon the exchange of registered or unregistered bonds, or vice versa, or for the substitution of several small bonds for one large one, and vice versa. For us to hold, as contended for by the defendant below, would be to reach such a conclusion. No additional tax is required upon the issuance of a permanent or definite bond in substitution for a temporary bond which has been delivered. The term "issued," as used in the statutes, implies not merely delivery, but delivery of an instrument creating or renewing an obligation, and not merely furnishing a different expression of a pre-existing obligation.

We think that the bonds were issued prior to the effective date of the Stamp Tax Act, and that the demurrer was properly overruled.

Judgment affirmed.