HENKELS v. MILLER, Alien Property Custodian, et al.

(District Court, S. D. New York. May 15, 1924.)

1. War ⬅️12—In action under Trading with Enemy Act, plaintiff not entitled to set aside release and claim interest.

Where an interlocutory decree was entered in a suit under Trading with the Enemy Act, § 9, as amended (Comp. St. Ann. Supp. 1923, § 3115½e), directing defendant to account to plaintiff, and parties agreed on amount of principal, defendant's refusal to pay principal until plaintiff had executed a release and satisfaction *held* not to entitle plaintiff to set aside release, on theory of duress, and claim interest, as plaintiff had no present right to principal sum, in view of section 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §· 3115½ff).

2. Evidence ⬅️5(2)—Judicial notice taken that United States securities bear less than legal interest.

The court may judicially notice that United States securities bear smaller interest than 6 per cent.

In Equity. Suit by Max Henkels against Thomas W. Miller, as Alien Property Custodian, and another. On complainant's motion to set aside a release and satisfaction. Motion denied.

Motion to set aside the release and satisfaction of decree executed by the plaintiff in the above-entitled suit. The suit was under section 9 of the Trading with the Enemy Act, as amended (Comp. St. Ann. Supp. 1923, § 3115½e), and resulted in an interlocutory decree adjudging the plaintiff to be an American citizen and the owner of certain shares of stock seized by the Alien Property Custodian on June 18, 1918, and afterwards sold under section 12. It further decreed that the defendants, the Alien Property Custodian and Treasurer of the United States, should account for the proceeds of the sale, "together with the income or interest, if any, earned thereon." A controversy arose as to whether any such interest was earned, which the defendants denied. The plaintiff wished immediately to get the principal sum of the sale, i. e., $873,776.28, the amount of which was agreed on, but which the defendants refused to pay, without receiving a release in full and satisfaction of the decree. To this the plaintiff objected, asserting his right to receive the principal at once, and later to litigate the question of the interest or income in an accounting under the interlocutory decree. Being unable to prevail, he yielded and gave the release and satisfaction required. The motion is based upon the theory that these documents were procured by duress and should be set aside, and that the accounting should proceed.

Morris J. Hirsch and Harry F. Mela, both of New York City, for the motion.

Dean Hill Stanley, of Washington, D. C., opposed.

LEARNED HAND, District Judge (after stating the facts as above).
[1, 2] If the plaintiff had a present right unconditionally to receive the principal, its retention by the defendants involved a loss to him arising from the defendants' wrong. The proceeds must, under section 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), be invested in United States securities, and these I may take judicial notice bear a smaller interest than 6 per cent., the legal rate. Thus the delay in receiving the principal would have resulted in a loss to the plaintiff pending the accounting, assuming that the legal rate is a fair compensation for the use of money. Hence the plaintiff argues that he was sub-

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

jected to a penalty in case he refused to give the release and satisfaction. I will not, because I need not, say that it would not be duress to exact the documents as a condition of immediate payment, if the principal was due. Perhaps the case, so viewed, may be within the doctrine of Maxwell v. Griswold, 10 How. 242, 13 L. Ed. 405; Robertson v. Frank Bros. Co., 132 U. S. 17, 10 Sup. Ct. 5, 33 L. Ed. 236; Edwards v. Chile Copper Co. (C. C. A. 2) 273 Fed. 452; Swift Co. v. U. S., 111 U. S. 22, 4 Sup. Ct. 244, 28 L. Ed. 341. But in those cases the payment was exacted to secure the release of property to which the plaintiff was absolutely and immediately entitled, or to avoid a statutory penalty, or to prevent a business from being closed. Unless there be some such right, the plaintiff has no case.

In the case at bar the plaintiff had no present right to the principal sum. In the first place, the interlocutory decree did no more than give him an accounting, on which the account had not yet been stated. True, the parties had agreed on the amount due for principal; but that agreement did not create a present right or duty, and the defendants would have had no warrant for the payment till the court had so ordered. Formally, at any rate, the necessary condition was lacking until the plaintiff had procured a decree for the payment of the principal.

But the case does not stop there. No such decree could lawfully have been passed until the whole account was finally struck, including interest as well as principal. The statute is explicit on the duties of the defendants in this regard. Section 9, so far as relevant, reads as follows:

"If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the treasury of the United States, as provided in this act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

It is true that this provision was intended primarily to protect the claims of third persons, of whom the plaintiff is one, upon the fund; but it is none the less the rule, and the only rule, applicable to the payment of moneys out of the funds collected under the act, in the absence of further action by Congress. It forbids any payment of the sums collected after suit commenced under section 9, except on order of the court in satisfaction of the final decree or other termination of the suit. The defendants had no lawful power to pay, and the plaintiff had no right to get, any part of the sum collected from the sale of the property until the suit had gone to final decree. Thus he was not unlawfully kept out of his money; the statute gave him the option, and only that, to take what the defendants would agree to give in final settlement, or to prosecute the accounting to final decree.

Even if the defendants had willfully refused, which they did not, to give him interest known to them to be due, his recourse was only to the court. The question whether any interest was earned at all in the sense that the law intended was possibly open to them, even under the decree; but if not, and if, as the plaintiff says, the decree had foreclosed it, still the amount was open to genuine dispute, and the defendants

were in duty bound to insist on its liquidation by a court. Till it was liquidated the plaintiff had no rights whose denial could be the basis of a charge of duress. If he would get his past-due interest, it was at the expense of suffering any loss involved in letting his principal meanwhile lie at a lower rate of interest. He might not consent to treat the decree as final, by giving a satisfaction in full, and still reserve his right later to litigate the question of interest. To set aside the satisfaction would make the payment of principal unlawful, since it would then have been a payment without any final decree to support it, which is contrary to the statute.

The result is not so harsh as the plaintiff would have me think, though its harshness would be irrelevant, if it existed. It was not unreasonable for Congress to insist that the payments should not be made piecemeal, and that the whole fund should remain intact until finally disposed of by the court. After all, the security was the highest possible, and the return was what the financial world deems adequate under such circumstances.

The motion is denied.