## UNITED STATES v. SMITH.

District Court, D. Massachusetts. May 22, 1929.

No. 1742.

Frederick H. Tarr, U. S. Atty., and John V. Spalding, Asst. U. S. Atty., both of Boston, Mass., and J. S. Bohannan, Asst. to Sol., Department of Agriculture, of Washington, D. C., for the United States.

Sherman L. Whipple, Lothrop Withington, and Claude B. Cross, all of Boston, Mass., for defendant.

MORTON, District Judge. This is an action, based on the regulations of the War Industries Board governing dealers in wool, to recover from the defendant, who was a central wool dealer, his profits for the year 1918, in excess of 5 per cent. of his gross sales. A demurrer to the declaration was heard and overruled. U. S. v. Smith (D. C.) 285 F. 751. The facts are settled by stipulation of the parties; and the question is which party is entitled to judgment.

When the case was heard on demurrer, it was assumed that the War Industries Board had power to make valid regulations concerning the wool business. Since then it has been decided in U. S. v. McFarland, 15 F.(2d) 823 (C. C. A. 4th) that the War Industries Board had no such power; and in the certiorari proceedings on that case the government

conceded in the Supreme Court that the regulations could not be supported. The statement of general facts by Judge Rose in the opinion in the McFarland Case is by stipulation incorporated into this case.

■ If the McFarland decision be accepted—as I think it ought to be—as a correct statement of the law, the only question in the present case is whether the slight difference in the facts is of such character as to lead to a different conclusion. In the McFarland Case the permit accepted by the defendant was of a different class from that applied for; here the permit followed the application. In accepting it the defendant signed an agreement—sent to him with it, as I understand the facts—"to operate subject to the rules heretofore adopted or to be adopted by said Board for the handling of the 1918 Domestic Clip." The government contends that this acceptance of the permit constituted an express contract with it binding upon the defendant, which incorporated the regulations under which this payment is claimed.

It does not seem to me that this is so. Regulations are not put out as offers to contract, but as orders issued by the authority of the government, binding upon persons whom they affect. They state the terms and conditions under which the business in question will be permitted to be carried on. Many different kinds of business are more or less controlled in this way; but persons who take licenses or permits to engage in them do not thereby contract with the government to observe all the regulations affecting them, whether lawful or not. As Judge Rose points out, it was practically impossible in 1918 to carry on the business of dealing in wool except under a permit; the argument that the defendant could refuse to take one and still continue in business is fanciful. Even if the acceptance of the permit be regarded as creating a contract between the government or the War Industries Board and the permittee—an assumption which seems to me erroneous—it would be an extreme view to construe such a contract as binding the permittee to regulations which the Board had no legal right to make. The present case comes in my opinion within the principle of Swift & Courtney & Beecher Co. v. United States, 111 U. S. 22, 4 S. Ct. 244, 28 L. Ed. 341.

■ In the McFarland Case it was held that the later statutes did not ratify and confirm the regulation in question. (C. C. A.) 15 F. (2d) 832. I share the doubt which the court there expressed whether Congress could constitutionally have done so. The right to pursue a legitimate business, not de-

pendent on government favor or special privileges, cannot even in war-time be conditioned upon acquiescence in unconstitutional exactions. The sums collected from the permittees are by the regulations not to be paid into the treasury of the United States, but to be kept as a separate fund and distributed by mere acts of favor, upon no fixed principle of law, to persons who have no legal claim on it. To hold that money may be exacted by the government for such a purpose would obviously open the door to the gravest possible abuses, and would in my opinion be profoundly unconstitutional.

I should like to add that, as the stipulated facts and Judge Rose's opinion show, it was vital to the interests of the country at the time in question that somebody should take firm control of the wool situation; and the way in which it was handled by those who took charge was characterized by great intelligence and ability. The failure of this minor portion of their plan ought not to obscure, nor to be taken as a criticism of, the merits of their work as a whole.

Judgment for defendant.