### ELECTRIC STORAGE BATTERY CO. v. McCAUGHN, Formerly Collector of Internal Revenue.

### No. 14008.

District Court, E. D. Pennsylvania.
April 28, 1931.

Charles C. Norris, Jr., of Philadelphia, Pa., for plaintiff.

Paul Freeman, Asst. U. S. Atty., of Philadelphia, Pa., and E. F. McMahon, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., for defendant.

KIRKPATRICK, District Judge.

This is an action at law tried to the court without a jury for the recovery of $973,-532.57, with interest, being the amount of manufacturers' excise taxes paid by the plaintiff between July 22, 1922, and April 1, 1926.

The taxes were assessed and collected under subdivision 3 of section 900, tit. 9 of the Revenue Act of 1921 (42 Stat. 291), and under subdivision 3 of section 600, tit. 6 of the Revenue Act of 1924 (26 USCA § 881 note). The portions of the two acts material to the issue in this suit are identical. The language is:

"* * * There shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer * * * a tax * * * (1) Automobile truck chassis and automobile wagon chassis. * * *

"(2) Other automobile chassis and bodies and motor cycles * * * except tractors.

"(3) * * * Parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles, enumerated in subdivision (1) or (2). * * *"

The plaintiff admits that during the period in question it made electric storage batteries and sold them to persons other than manufacturers of automobiles, and the question involved in this suit is whether those batteries were parts for automobiles.

It appears from the evidence that electric storage batteries are of a great many different sizes and types. Some of them (the submarine batteries for example) stand four or five feet high; others are not much bigger than the palm of the hand. Obviously, such batteries could not possibly be parts for automobiles. Other types are of a size and capacity perfectly adapted to use upon automobiles and are so used. Moreover, it was conceded that the plaintiff during the taxable period published an "Index" which it distributed to its customers in which it specified the particular type of battery of its manufacture which it recommended for each of the various makes of automobile then in existence. However, as to the specific articles upon the sale of which the taxes were imposed, beyond the fact that they were electric storage batteries, there is no evidence as to their characteristics or what they were ultimately used for.

Since the suit is to recover taxes alleged to have been erroneously exacted, the burden of proof is upon the plaintiff to show facts establishing the invalidity of the taxes. United States v. Anderson, 269 U. S. 422, 423, 46 S. Ct. 131, 70 L. Ed. 347; Botany Worsted Mills v. United States, 278 U. S. 282, 289, 290, 49 S. Ct. 129, 73 L. Ed. 379; Reinecke v. Spalding, 280 U. S. 227, 233, 50 S. Ct. 96, 74 L. Ed. 385. Hence, in the absence of proof to the contrary, it must be assumed that the articles upon the sale of which these taxes were collected were electric storage batteries of one of the types adapted to installation upon automobiles (an example of which is the plaintiff's 3–XC–13–1 battery, in evidence as Plaintiff's Exhibit 5). It may be further assumed, if the fact has any value, that the batteries sold were actually used for automobiles. If this were not so, it was for the plaintiff to show it. See Perfection Gear Co. v. United States (Ct. Cl.) 41 F.(2d) 561.

These considerations make it unnecessary to consider a large amount of the plaintiff's testimony intended to show that various other types of batteries can be used just as well or better for other purposes than au-

tomobile installations. Thus, there was in evidence, as Defendant's Exhibit 1, a type of battery made by the plaintiff and called by it a radio battery. This battery is of slightly different construction from the batteries advertised for use upon automobiles. Not being intended to meet the high discharge rate required in starting automobiles, it was possible to make it so that it would have a longer life. The defendant's answer to all this could properly be: "There is no evidence that any of the batteries taxed were radio batteries. If any were you have failed to show it."

█ The burden upon the plaintiff is therefore to show that the batteries, the sale of which was taxed, were not parts for automobiles although capable of use as such, and at this point we inquire what facts it must establish in order to meet this burden.

██ In the Universal Battery Company v. United States, 281 U. S. 580, 50 S. Ct. 422, 423, 74 L. Ed. 1051, the Supreme Court had occasion to construe the section of the Revenue Act of 1921 involved in this case. The court referred to the administrative regulations issued by the Bureau of Internal Revenue under section 900 and adhered to for a period of ten years, which construed the term "part" as meaning any particle designed or manufactured for the special purpose of being used as, or to replace, a component part of a motor vehicle, and which by reason of some characteristic is not such a commercial article as ordinarily would be sold for general use, but is primarily adapted for use as a component part of such vehicle. The court said that this was an admissible construction of the act and went on to say: "Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. Magone v. Wiederer, 159 U. S. 555, 559, 16 S. Ct. 122, 40 L. Ed. 258. We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

The rule thus stated and the application of it to the five cases dealt with by the court

in the ensuing portions of the opinion leave no doubt as to what the plaintiff must show in order to establish the illegality of the assessments against it. The test is whether the articles are primarily adapted for use in automobiles. That does not mean adapted solely for such use or exclusively so used. On the other hand, they will be held to be primarily adapted to such use, even though there has been or is some other use made of them, if they are not so well adapted to such other use. But, if they are "equally adapted to a variety of uses and commonly put to such uses," they cannot be said to be primarily adapted for use in motor vehicles.

█ The plaintiff here meets the issue by undertaking to prove that the type of batteries which is adapted to use in automobiles is equally well adapted to a variety of other uses and is commonly put to such other uses.

Although much evidence was produced which showed that, where exactly the same duty was required of two batteries in two different kinds of use, the same battery would be equally well adapted to either, this did not by any means establish the plaintiff's proposition, because it still remained to show that there were different uses for the type in question which called for exactly the same duty. But there was proof that the starting or cranking of all internal combustion engines of the same size calls for substantially the same duty from the battery, and that, where the type of lighting in use in automobiles and motorboats is also required, that duty is secondary and need not affect the construction of the battery. There are also various requirements as to size, weight, portability, and price, but I think the evidence sufficiently shows that these requirements are the same in the cases of automobiles, motorboats, and starting batteries for farm lighting.

As a matter of fact, the identical types of batteries sold and advertised by the plaintiff for use in automobiles are also sold and advertised by it for use in motorboats in connection with marine engines, and when so used they are installed without the slightest change or adaptation. There is no definite testimony as to the extent of such use (except that an estimate of the number of vessels propelled by internal combustion engines was given). It is, of course, not nearly so wide as the use upon automobiles, but common knowledge tells us that it is far too extensive to be classified as exceptional, extraordinary, or incidental. There is also evidence that these same batteries, without

change, have been sold in considerable numbers for use as starting batteries in one type of farm electric light installation. This evidence is really undisputed, and I therefore conclude that, since there are extensive uses other than in connection with automobiles to which the batteries commonly used on automobiles are equally well adapted, such batteries are not parts of automobiles within the meaning of the Revenue Acts.

It may be true, as is contended by the government, that this construction will leave very few articles taxable as parts of automobiles. That consideration, however, is not for this court, but may well be assumed to have been before the Supreme Court when the rule was laid down in Universal Battery Co. v. United States, supra. Our duty as we conceive it is to apply that rule with as nearly mathematical accuracy as possible.

The conclusion reached in this case is the same as that reached by Judge Dickinson, on a somewhat broader line of reasoning, in the case of the Philadelphia Storage Battery Co. v. Lederer (D. C.) 21 F.(2d) 320. It was only because the Supreme Court in the Universal Battery Co. v. United States, supra, has passed upon the question since Judge Dickinson's decision and because the evidence presented in this case is necessarily slightly different that I felt it necessary to discuss the question at length.

■ The defendant moved to dismiss on the ground that, since this action was not begun prior to April 30, 1928, the court, by reason of section 424(a) of the Revenue Act of 1928 (26 USCA § 2424), is without jurisdiction to entertain it. The defendant has clearly misconceived the purpose and scope of the section of the act upon which it relies. In substance it provides as follows:

"No refund shall be made of any amount * * * collected from any manufacturer [of parts for automobiles] * * * unless either—

"(1) Pursuant to a judgment of a court in an action duly begun prior to April 30, 1928; or

"(2) It is established to the satisfaction of the Commissioner that such amount was in excess of the amount properly payable upon the sale or lease of an article subject to tax, or that such amount was not collected, directly or indirectly, from the purchaser or lessee, or that such amount, although collected from the purchaser or lessee, was returned to him; or

"(3) The Commissioner certifies to the proper disbursing officer that such manufacturer, * * * has filed * * * a bond * * * conditioned upon the immediate repayment to the United States of such portion of the amount refunded as is not distributed by such manufacturer, * * * within six months after the date of the payment of the refund, to the persons who purchased * * * the articles in respect of which the refund is made. * * * *"

The defendant construes this act as though it meant that after April 30, 1928, no action can be begun in any court for the recovery of the taxes referred to, and that after that date the only method of recovery permitted is an application for refund to the Commissioner, which application would be subject to the provisions of clauses 2 and 3.

The act does not say this, however, and, in order to get that meaning out of it, it must be read as though the limitation placed upon refunds by the government applied as well to the right of action to recover the tax. These are two different things, and may exist together. Thus an action to recover taxes illegally collected may be brought against the collector personally under the common law. If the plaintiff obtains judgment, it will be a personal judgment against the collector. The plaintiff still has to collect his money from the government. Section 989 of the Revised Statutes (28 USCA § 842) provides that, if the court certifies that there was probable cause for the collection of the tax by the collector, "the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the Treasury." If no certificate of probable cause issues, there will be no "refund" by the government.

The word "refund" in section 424(a) of the Revenue Act of 1928 clearly refers to the repayment to the taxpayer by the government of the money collected by the collector. As has been shown, this repayment may be made in pursuance of a judgment of a court in an action against the collector. It may also be made directly by the collector under the treasury regulations without the intervention of any court. What section 424 (a) means (so far as it concerns refunds pursuant to judgments of courts) is that, if a suit to recover the tax has been brought prior to April 30, 1928, the refund pursuant to the judgment rendered in such suit will be made exactly as though section 424(a) had not been enacted. If, however, suit is brought later than April 30, 1928, then clauses 2 and 3 apply to any

refund which may be made pursuant to the judgment and, before the plaintiff can get his money, he must satisfy the Commissioner either that the levy was an excessive levy upon articles properly subject to the tax or that he had not passed the tax on to purchasers from him, or if so passed on, that it had been returned by him to the purchasers, or, finally, if he has passed on the tax to his purchasers, he must give a bond to distribute and return to them such portion of the tax recovered by him which he has already collected from them. Obviously this construction is in accord with the general purpose of the section. The ultimate consumer to whom the tax had been passed on already had the right to recover, but it is clear from the legislative record that Congress intended to deal with proceedings by the manufacturer to recover the tax, at the same time safeguarding such proceedings so that the manufacturer could not be unjustly enriched by keeping taxes which might be refunded to him but which he had already passed on to his customers. The limitations upon refunds in pursuance of judgments of courts were made effective April 30, 1928, instead of May 29, 1929, the effective date of the act.

The conclusion reached is substantially in accord with that of Judge West in Willard Storage Battery Company v. Routzahn, Collector, decided December 16, 1929, in the District Court for the Northern District of Ohio. [1]

■ Another ground for the motion to dismiss filed by the defendant was that no protest had been made at the time of the payment of the taxes. I have found as a fact that at the time the first payment by the plaintiff was made (April 28, 1919) there was a sufficient protest both oral and written. That tax was paid under section 900 of the Revenue Act of 1918 (40 Stat. 1122). The Revenue Acts of 1921 and 1924 were, so far as this tax is concerned, re-enactments of the act of 1918. The phraseology in each of the other acts is identically the same, with the exception that the act of 1924 reduced the tax to 2½ per cent. upon the sales price of parts. The payments involved in this case were made monthly, and it was not necessary that each time payment was made the protest should be repeated. Radich v. Hutchins, 95 U. S. 210, 24 L. Ed. 409; Swift & C. & B. Co. v. United States, 111 U. S. 22, 4 S. Ct. 244, 28 L. Ed. 341; Atchison, T. & S. F. Ry. Co. v. O'Connor,

223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Ward v. Board of County Com'rs of Love County, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751.

■ In addition the Revenue Act of 1924, § 1014(a), 26 USCA § 156, amending section 3226 of the Revised Statutes, obviated the necessity of payment under protest or duress and is applicable to an action against the collector personally. It applies to payments already made and suits founded thereon as well as payments to be made. Weir v. Dean (Southern District of Ohio) 52 F.(2d) 201.

### Findings of Fact.

1. That payment of the excise taxes in suit was made under duress and after protest by the plaintiff against its collection.

2. That none of the storage batteries upon the sales of which the taxes in suit were paid were sold to manufacturers of automobiles, but practically all of them were sold by the plaintiff to jobbers, distributors, and storage battery and electrical service dealers.

3. That the parts of the electric storage batteries upon which the taxes in suit were paid were exactly the same as the parts of the storage batteries manufactured by the plaintiff in 1893 or 1894, and the only changes in the parts themselves are the changes naturally due to the refinement in art of manufacture developed during that period and to competition in price. None of these refinements made the batteries peculiarly adapted to use on automobiles, but they continued to be equally adapted to use on any device where the duty requirements were the same.

4. That the uses of electric storage batteries manufactured by the plaintiff and upon which the taxes were paid, other than the use on automobiles, were not incidental to the use on automobiles.

5. That the storage batteries manufactured by the plaintiff, and upon which the taxes in suit were paid, were not peculiarly adapted only to automobiles, but were equally well adapted to use in stationary engines and marine engines, and for other purposes where the duty required was the same, and were so used.

6. That the storage batteries manufactured by the plaintiff, and upon which the taxes in suit were paid, were not primarily adapted to use only on automobiles.

7. That the storage batteries manufactured by the plaintiff, and upon which the

---

[1] Not to be published. Per Court.

taxes in suit were paid, were interchangeable for use in connection with automobiles or for use in connection with other devices where the duty requirements were the same.

8. That the storage batteries manufactured by the plaintiff, and upon which the taxes in suit were paid, were widely and extensively advertised for purposes other than for use on automobiles.

9. The duty required of storage batteries for use in automobiles was also required in other uses, and the batteries·which were applied to these other uses were identical in design with the batteries used in connection with automobiles.

10. In addition to the foregoing findings of fact, the facts appearing in the stipulation of counsel as shown in the record of testimony are found. In addition, the facts stated in the foregoing opinion may also be taken without repetition here as though found separately.

#### Conclusions of Law.

1. Articles upon the sale of .which the taxes in suit were collected were not parts or accessories for any of the articles mentioned in subdivisions (1) and (2) of section 900, tit. 9 of the Revenue Act of 1921 (42 ·Stat. 291) or section 600, tit. 6 of the Revenue Act of 1924 (26 USCA § 882, and '§ 881 note).

2. The taxes in suit were illegally assessed and collected. The plaintiff is entitled to judgment in the amount of $1,-362,861.27, together with interest on the sum of $973,532.57 from the date November 12, 1930, to the date hereof.