Bebgan, J. (dissenting).
On March 15, 1965 the Supreme Court in Matter of Trans-Lux Distr. Corp. v. Board of Regents (380 U. S. 259) summarily, and on the authority of Freedman v. Maryland (380 U. S. 51) decided two weeks earlier, reversed the decision of this court in Matter of Trans-Lux Distr. Corp. v. Board of Regents (14 N Y 2d 88) which had sustained refusal *423 by the Board of Regents to license a motion picture, and had again upheld the validity of the New York licensing statute (Education Law, tit. I, art. 3, part II).
Trans-Lux applied to this court in June, 1965 to amend the remittitur entered under the decision at 14 N Y 2d 88 to conform the judgment to the Supreme Court mandate and this motion was granted June 10 (16 N Y 2d 710). Specifically, the court directed that " the matter be remitted to the Supreme Court, Albany County, with directions to vacate its judgment entered April 24,1964, and to enter a new judgment declaring and determining that part II of article 3 of title I of the Education Law violates the Fourteenth Amendment of the Constitution of the United States and is null and void ” (16 N Y 2d, at p. 711).
In opposition to that motion the Board of Regents argued the general provisions of the statute survived the Supreme Court’s decision and that the court did not “ hold that the statute of the State of New York is unconstitutional ”. This was an argument that the licensing and collection of the licensing fees could continue although the Regents must change its procedures.
This court’s answer, as it has been observed, was a determination that the entire statute “is null and void”, a decision embracing the fee provisions. This much must be said about the belief of the majority that the fees as such have never been held illegal.
It is not disputed claimant paid the State $128,322.50 in fees during the six-year period before June 10,1965, either for licenses issued to it or to its parent corporation Paramount Pictures Corporation. The Court of Claims found claimant was entitled to $29,279 which was the amount claimant had paid in fees for licenses issued directly to it, but that it was not entitled to $99,025 which claimant itself had also paid as fees for licenses issued to its parent Paramount Pictures. The Appellate Division, by a divided court, modified this judgment to allow claimant the full amount of its claim, $128,322.50.
On the State’s argument that a large part of the fees paid by claimant were not under protest, and, therefore, not recoverable because voluntarily paid, it is necessary to examine the two leading cases in this court in their impact on this problem and on each other.
*424 In 1957 the court decided Mercury Mach. Importing Corp. v. City of New York (3 N Y 2d 418). This case involved actions to recover payments made by taxpayers on interstate business levied under the New York City General Business and Financial Tax Law. The tax in its effect on interstate commerce had been previously held invalid.
Since there had been no protest made, and the conditions of duress did not exist under which protest was deemed unnecessary, i.e., “ duress, where present liberty of person or immediate possession of needful goods is threatened by nonpayment ” of the tax or where there was a resulting lien, the tax was held not under duress, and since not protested, could not be recovered (3 N Y 2d, at p. 425).
Five years later in 1962 the court decided Five Boro Elec. Contrs. Assn. v. City of New York (12 N Y 2d 146). It held that license fees paid by a number of electricians over a five-year period under a statute which had been held by this court invalid because excessive in amount and bearing no relation to the cost of licensing, could be recovered although paid by plaintiffs without protest.
To reach this result it became necessary for the court to distinguish Mercury (3 N Y 2d 418, supra) which it undertook to do. The ground of distinction was precisely laid down. No protest was needed, and there was, in effect, a resulting duress because ‘ ‘ these electricians were placed in a situation where their only alternative was to submit to an illegal exaction or discontinue their businesses (Swift Co. v. United States, 111 U. S. 22, 28). They were not allowed to operate without licenses, nor could their licenses be renewed except by payment of excessive fees” (12 N Y 2d, at p. 149).
The court excused failure to protest the payment of fees even as to those made after there had been a judicial determination that the statute as applied was invalid. That decision, Adlerstein v. City of New York (11 Misc 2d 754, affd. 7 A D 2d 717, affd. 6 N Y 2d 740), was rendered at Special Term in April, 1958, and the fees allowed to be recovered were paid from 1954 through 1959 (12 N Y 2d, p. 147).
The ground for this was that even after Adlerstein (supra) was decided “ unless they [licensees] had paid the excessive fees required for their licenses to do business they would have *425 been prevented from earning a livelihood while that litigation was pending. The right to earn one’s living and to engage in business is fundamental and its protection is necessary to the interests of society” (12 N Y 2d, at pp. 149-150).
Therefore, the rule of Mercury (3 N Y 2d 418, supra) was held not to apply to an invalid license requirement which, if not obeyed, would result in the loss of a right to engage in business. That exception to Mercury is exactly the case of the present claimant. There is at least as much “ authentic resistance ” to the payment of the claimant’s license fees as there was in Five Boro (12 N Y 2d 146, supra) and the actual protest came earlier in relation to judicial declarations of invalidity addressed to the respective statutes.
What seems decisive in the majority’s summation of the grounds for decision here is that claimant’s “ payment of license fees without protest was voluntary for purposes of recovery of moneys paid as fees or taxes ”. On this aspect of the case, at least, Five Boro (12 N Y 2d 146, supra) appears to be indistinguishable and it should be overruled or followed. The need for protest, and not the uses to which the fees were put, was decisive in Five Boro. The rule for licensed electricians and licensed motion picture exhibitors should be pretty much the same.
Thus the difference between regulatory fees and revenue imposts played no part in the announced reasons for decision in Five Boro and is not a ground to distinguish the present case. This court did not in Adler stem (6 N Y 2d 740, supra) hold the electricians’ license fees so high as to become a revenue impost; and Five Boro did not consider this ground, but treated the actions as brought to “ recover excess money ” (12 N Y 2d, at pp. 147-148) under the Adlerstein holding that the fees were unconstitutionally excessive.
That the State used the proceeds of the license fees collected under the statute in the licensing operation itself does not for the purposes of this case distinguish it from one where the fee or tax is used for general State purposes. Here the program of inspection and licensing expressed in the statute was responsive to the State’s belief in the value of censorship to protect public morals and elevate public taste, and so in furtherance of a general public policy. No benefit to the business of motion *426 picture exhibitors was intended or demonstrated in the experience with censorship.
Hence the impact of the fee on the licensee’s business was not for the protection or assistance of the licensee or even to improve its service to the public, but rather to effectuate the purpose of public authority to censor.
Long experience with this type of censorship left its benefit to the public doubtful, and where approval of films was not granted routinely, the censor tended to act repressively against creative innovation. Ultimately censorship ran afoul of constitutional freedom of expression.
It is true, as the majority has observed, that an action for recovery for unjust enrichment or restitution should appeal to equity and good conscience and this principle ought to apply to an action such as the present one.
Here the good conscience in issue is that of the sovereign which collected the fees under the compulsion of a statute which the sovereign State itself, by its highest court, advisedly held to be “null and void”. It seems the part of fair dealing to turn the money back.
The sum is large for the taxpayers as well as the State. As Judge Ftjld noted in dissent in Mercury (3 N Y 2d 418, supra); ‘ ‘ Modern and enlightened tax administration frowns upon the imposition of technical obstacles to the refunding of illegally collected taxes ” (p. 433).
The order should be affirmed.
Judges Burke, Scileppi and Jasen concur with Judge Breitel; Judge Bergan dissents and votes to affirm in a separate opinion in which Chief Judge Fuld and Judge Gibson concur.
Order reversed, with costs, and case remitted to the Court of Claims for further proceedings in accordance with the opinion herein.